966 So.2d 519 (2007)
Stephen B. LACOSTE, et al.
v.
PENDLETON METHODIST HOSPITAL, L.L.C.
Nos. 2007-CC-0008, 2007-CC-0016.
Supreme Court of Louisiana.
September 5, 2007.
Rehearing Denied November 2, 2007.
*520 Roedel, Parsons, Koch, Blache, Balhoff & McCollister, David Alva Woolridge, Jr., Larry Michael Roedel, Baton Rouge, for applicant in No. (2007-CC-0008).
Best Koeppel, Peter Stephan Koeppel, Laurence Edward Best, Peggy Wallace, New Orleans; Wilson & Bowling, David A. Bowling, New Orleans, Jennifer Lyn Dowty, for respondent in No. (2007-CC-0008).
Kurt Stephen Blankenship, Mandeville, Robert Irby, Richard Engel Gruner, Jr., Mandeville, for amicus curiae, Tenet HealthSystem Memorial Medical Center, Inc.
James Paul Waldron, Peter Elliot Sperling, Bruce A. Cranner, New Orleans, for amici curiae, Lindy Boggs Medical Center and Meadowcrest Hospital.
Best Koeppel, Peter Stephan Koeppel, Laurence Edward Best, Peggy Wallace, *521 New Orleans, for applicant in No. (2007-CC-0016).
Roedel, Parsons, Koch, Blache, Balhoff & McCollister, David Alva Woolridge, Jr., Larry Michael Roedel, Baton Rouge; Wilson & Bowling, David A. Bowling, New Orleans, Jennifer Lyn Dowty, for respondent in No. (2007-CC-0016).
CALOGERO, Chief Justice.
Today we reiterate that the limitations on the legal liability of qualified health care providers in Louisiana, as set forth in the Louisiana Medical Malpractice Act (LMMA), are to be applied only and strictly to cases of medical malpractice as defined in the LMMA, because the LMMA's limitations on such liability were created by special legislation in derogation of the general rights of Louisiana tort victims. In this civil action against a private hospital for survival and wrongful death damages, the plaintiffs contend their decedent, while a patient in the defendant's hospital, died during a natural disaster as a result of the failure of the hospital to design, construct, and/or maintain a facility so as to provide sufficient emergency power to sustain life support systems and/or to prevent flood waters entering the structure, as well as the result of the failure of the hospital to implement an adequate evacuation plan, to have a facility available for the transfer of patients, and/or to have in place a plan to transfer patients in the event of a mandatory evacuation. We granted the writ applications in this case to examine whether such claims sound in general negligence or constitute medical malpractice under the parameters of the LMMA. For the reasons set forth below, we find the defendant health care provider was not entitled to a medical review panel for the claims set forth in the plaintiff's petition, as amended. Therefore, the district court correctly overruled the defendant's dilatory exception of prematurity. We thus reverse the decision of the court of appeal and reinstate the ruling of the district court.
This case originated with a petition for damages filed by the plaintiffs, Stephen B. LaCoste, individually and as legal representative of his father, Belgarde LaCoste, his brother Neal LaCoste, and the estate of Althea LaCoste, and Jann L. Raymond, Corlis LaCoste, Linda L. Rogue, Dana L. Barthelemy, and D'Andrea L. Prater, in Civil District Court for the Parish of Orleans on March 21, 2006, naming as defendant, Pendleton Methodist Hospital, L.L.C. (Pendleton Methodist). In the petition for damages, the plaintiffs alleged that Althea LaCoste was admitted to defendant's hospital on or about August 28, 2005, at which time she was recovering from pneumonia and required the use of a ventilator. The plaintiffs alleged that, during Hurricane Katrina and its aftermath, the hospital lost electrical power and emergency power resulting in the failure of life support systems used to sustain the lives of individuals like Mrs. LaCoste, who were dependent on such systems. The plaintiffs alleged the loss of use of the emergency power and the defendant's failure to implement an adequate evacuation plan were a direct and proximate cause of Mrs. LaCoste's death. Specifically, the plaintiffs alleged negligent and intentional conduct of the defendant in: (a) designing, constructing and/or maintaining a facility in such a manner that the hospital did not have sufficient emergency power to sustain life support systems; (b) designing, constructing and/or maintaining a facility in such a manner that allowed flood waters to enter the structure, thus endangering the safety of patients; and (c) failing to implement an adequate evacuation plan.
On May 8, 2006, the plaintiffs filed a first supplemental and amending petition *522 for damages naming as an additional defendant, Universal Health Services, Inc., and asserting additional acts of negligence by the defendants in failing to have a facility available for transfer of patients, and in failing to have in place a plan to transfer patients in the event of mandatory evacuation.[1]
Pendleton Methodist, a qualified health care provider pursuant to the LMMA, filed a dilatory exception of prematurity to the plaintiffs' petition for damages and to their first supplemental and amending petition for damages on the basis that the plaintiffs' claims sounded in medical malpractice, thus falling within the parameters of the LMMA and, therefore, requiring review by a medical review panel before commencement of litigation in the state courts. The district court heard argument on the defendant's exception on August 11, 2006. The district court denied the exception on August 21, 2006, reasoning that the plaintiffs' allegations of wrongful conduct were not treatment related or caused by the dereliction of professional skill. The court reasoned that these allegations, rather than implicating medical treatment or professional skill, instead "relate to deficient design of the hospital including lack of emergency power, failure to implement an evacuation plan and failure to have a facility to transfer patients." The district court concluded that the plaintiffs' allegations do not invoke the coverage of the LMMA. The district court then overruled the defendant's exception of prematurity.
The Louisiana Patients' Compensation Fund Oversight Board (PCF) notified the parties that the allegations contained in the plaintiffs' request for a medical review panel and petitions were not within the scope of medical malpractice as defined in the LMMA. Subsequently, the PCF filed a petition of intervention in the district court aligning itself with the plaintiffs in opposition to the defendant's exception of prematurity.
The defendant applied to the court of appeal for supervisory writs from the district court's denial of its exception of prematurity. The court of appeal granted the writ in part and sustained Pendleton Methodist's exception as to all allegations save those sounding in intentional tort. The court of appeal found that the plaintiffs' claims as set forth in the original and amending petitions, "relating to the handling of Ms. LaCoste once admitted to Methodist, the medical treatment she received, the evaluations made of her during her stay in Methodist, and her presentation *523 to the health care provider which determined whether and when she should be evacuated from Methodist," were "all medical in nature and fall within the provisions and purview of the LMMA."
The court of appeal further found that whether the emergency electric-generating equipment, which powered the hospital equipment, was adequate, as well as the decision to evacuate or not, also fell within the purview of the LMMA. The court of appeal reasoned that a failure to have appropriate or working back-up equipment was equivalent to a failure to have necessary medical supplies with which to treat a patient. The court found that the underlying issues were the condition of the patient and the treatment provided to the patient during and after a natural disaster. The court reasoned that these issues related to patient care, i.e., whether the defendant hospital breached the applicable standard of care respecting the best care for patients when faced with a natural disaster, and further noted that expert evidence would be necessary to answer such a question. The court then dismissed without prejudice that part of the plaintiffs' petition containing allegations regarding the electrical generating equipment and evacuation plan, and it remanded the case for further proceedings on the petition's allegations of intentional tort. LaCoste v. Pendleton Methodist Hosp., L.L.C., 06-1268, pp. 7-8 (La.App. 4 Cir. 12/6/06), 947 So.2d 150, 155.
We granted the consolidated writ applications of the plaintiffs and the PCF. LaCoste v. Pendleton Methodist Hosp., L.L.C., 07-0008, 07-0016 (La.2/2/07), 948 So.2d 184, 185. The issue thus presented in this case is whether the plaintiffs' claims in their original and amending petitions sound in medical malpractice, and thus fall within the purview of the LMMA, or whether they sound in general negligence.
The dilatory exception of prematurity provided in La.Code Civ. Proc. art. 926 questions whether the cause of action has matured to the point where it is ripe for judicial determination, because an action will be deemed premature when it is brought before the right to enforce it has accrued. Williamson v. Hospital Service Dist. No.1 of Jefferson, 04-0451, p. 4 (La.12/1/04), 888 So.2d 782, 785; Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977, p. 4 (La.2/29/00), 758 So.2d 116, 119; see also Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law § 21-3(f) (1996). Under the LMMA, a medical malpractice claim against a private qualified health care provider is subject to dismissal on an exception of prematurity if such claim has not first been presented to a medical review panel. La.Rev.Stat. 40:1299.47(A); Williamson, 04-0451 at p. 4, 888 So.2d at 785. This exception is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for consideration by a medical review panel before filing suit against the provider. La. Code Civ. Proc. art. 926; Spradlin, 98-1977 at p. 4, 758 So.2d at 119; Frank L. Maraist & Harry T. Lemmon, 1 Louisiana Civil Law Treatise, Civil Procedure § 6.6, 116 (West 1999). In such situations, the exception of prematurity neither challenges nor attempts to defeat the elements of the plaintiff's cause of action; instead, the defendant asserts the plaintiff has failed to take some preliminary step necessary to make the controversy ripe for judicial involvement. Spradlin, 98-1977 at p. 4, 758 So.2d at 119; Maraist & Lemmon, supra. The burden of proving prematurity is on the exceptor, in this case the defendant hospital, who must show that it is entitled to a medical review panel because the allegations fall within the *524 LMMA. Williamson, 04-0451 at p. 4, 888 So.2d at 785 (finding alleged negligence of hospital in failing to repair wheelchair and in failing to make sure that wheelchair was in proper working condition did not arise from medical malpractice within meaning of LMMA); Spradlin, 98-1977 at p. 4, 758 So.2d at 119 (alleged patient "dumping" sounded in malpractice).
This court has steadfastly emphasized that the LMMA and its limitations on tort liability for a qualified health care provider apply only to claims "arising from medical malpractice," and that all other tort liability on the part of the qualified health care provider is governed by general tort law. Coleman v. Deno, 01-1517, pp. 15-16 (La.1/25/02), 813 So.2d 303, 315 (finding claim for alleged wrongful transfer from one emergency room to another of a patient whose left arm was later amputated sounded in medical malpractice); Williamson, 04-0451 at p. 5, 888 So.2d at 786. This is so because, as we have oft repeated, the LMMA's limitations on the liability of health care providers were created by special legislation in derogation of the rights of tort victims. Williamson, 04-0451 at p. 5, 888 So.2d at 786; Sewell v. Doctors Hospital, 600 So.2d 577, 578 (La.1992) (finding strict liability for defects in hospital bed that collapsed resulting in injury to patient was not included within definition of medical malpractice under the LMMA). In keeping with this concept, any ambiguity should be resolved in favor of the plaintiff and against finding that the tort alleged sounds in medical malpractice. The limitations of the LMMA, therefore, apply strictly to cases of malpractice as defined in the LMMA. Williamson, 04-0451 at p. 5, 888 So.2d at 786.
The LMMA defines "malpractice" as:
any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.
La.Rev.Stat. 40:1299.41(A)(8).
The LMMA further defines "tort" and "health care" as follows:
"Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
La.Rev.Stat. 40:1299.41(A)(7) (emphasis added).
"Health care" means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf or a patient during the patient's medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components.
La. Rev. Stat. 40:1299.41(A)(9).
This court in Coleman v. Deno, pp. 17-18, 813 So.2d at 315-16, set forth six *525 factors to assist a court in determining whether a claim sounds in medical malpractice and must first be presented to a medical review panel:
(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) whether the pertinent act or omission involved assessment of the patient's condition;
(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;
(5) whether the injury would have occurred if the patient had not sought treatment; and
(6) whether the tort alleged was intentional.
In the instant case, the defendant hospital, which has the burden of proof as the exceptor, has chosen to rely on the allegations as set forth in the plaintiffs' original and first supplemental and amending petitions, because the defendant put on no other evidence at the trial. Where no evidence is presented at trial of a dilatory exception, like prematurity, the court must render its decision on the exception based upon the facts as alleged in the petition, and all allegations therein must be accepted as true. Blakely v. Powers, 590 So.2d 1286, 1290 (La.App. 1st Cir.1991). Accordingly, we now apply the Coleman factors to the allegations asserted in the plaintiffs' petition, as amended, which we accept as true for the purpose of resolving this dispute. Upon doing so, we conclude that the claims as asserted in the plaintiffs' petition, as amended, do not fall within the purview of the LMMA, and thus the district court properly denied the defendant's exception of prematurity.
(i) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill
The defendant asserts the petition essentially alleges that the hospital failed to maintain life-support systems, which directly invokes a relationship to patient treatment and constitutes an unintentional tort in the "failure to render services timely and the handling of a patient." The defendant also maintains that the plaintiffs have retreated from their allegations regarding failure to transfer the decedent by focusing on the allegedly negligent pre-storm planning for a post-storm evacuation. Relying on Coleman itself, the defendant ultimately argues that transferring or not transferring a patient, which requires a doctor's order, is treatment related and that the hospital's decision "to shelter in place rather than transfer patients to other hospitals" as the storm approached is related to medical treatment. The plaintiffs counter that the district court correctly found the allegations of wrongful conduct are not treatment related and were not caused by the dereliction of professional medical skill. The plaintiffs contend that whether the hospital was designed, constructed or maintained in such a manner that it lacked sufficient emergency power is a premises liability issue, because neither the optimum location of generators in a protected location, from wind or flood waters, nor the adequacy of available fuel in the event of a power outage is related to treatment by or the skill of a medical professional.
We agree with the district court's reasoning that the plaintiffs' allegations of misconduct do not relate to medical treatment or the dereliction of professional medical skill; instead, they relate to deficient *526 design of the hospital, including lack of emergency power, a failure to implement an evacuation plan, and a failure to have a facility to which a transfer of patients could be made. Though the appellate court reasoned that the lack of sufficient back-up power is akin to a failure to have adequate equipment and, thus, a failure to provide medical treatment, reading the plaintiffs' allegations in light of the strict application of the LMMA does not lead to the conclusion that they relate to medicine, medical care, or medical treatment. The language of the allegations, "designing," "constructing," "maintaining," and "failing to implement" all suggest premises liability and general negligence rather than a dereliction of professional medical skill. The petition alleges that Mrs. LaCoste's death resulted from a lack of "sufficient power," inadequate protection from floodwaters, and a failure to implement an adequate evacuation plan, alleged wrongs that would involve administrative or engineering decisions regarding building design or maintenance and emergency preparedness. The petition as amended does not allege that her death was caused by a failure to render medical treatment as the result of a deficiency in professional medical skill.
Furthermore, the plaintiffs do not allege a "failure to transfer," but rather, they allege that the defendant failed to implement an adequate evacuation plan, failed to have in place a plan to transfer patients in the event of a mandatory evacuation, and failed to have a facility available for the transfer of patients. While a failure to transfer may relate to medical malpractice in another case, a lack of any possibility of transferring a patient because the hospital failed to have in place and to implement an adequate evacuation plan, failed to have adequate emergency power if the decision to shelter in place was made, and failed to design or maintain a building that protected against floodwaters is not "treatment related" or the result of a dereliction of professional medical skill, based on the factual allegations to which our review is limited. There is no allegation in the instant petition that the hospital's medical personnel failed to order a transfer of the decedent to another facility. As we cautioned in Williamson, "[a]n expansive reading of the definition of medical malpractice contained in the MMA runs counter to our previous holdings that coverage of the Medical Malpractice Act should be strictly construed. . . ." Williamson, p. 8, 888 So.2d at 787.
(ii) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached.
The defendant asserts that expert medical evidence is necessary because emergency preparedness in the field of health care is vastly different from ordinary emergency preparedness, and medical experts will be essential in determining the standard of care unique to the implementation of a program such as the hospital's emergency preparedness plan. The plaintiffs counter that they have not named as defendants any medical professionals who might be accused of breaching the standard of professional medical care. They point out that "standard of care" is not an expression used in the allegation of wrongful conduct, and contend that a medical professional would not be qualified or necessary to provide evidence of the design of a facility's back-up emergency power; instead, an architect or engineer or other similarly trained individual could testify as to a duty and breach thereof by the hospital.
Expert medical evidence may be necessary to establish causation with regard to *527 the death of Mrs. LaCoste; however, we can discern no requirement for such expert medical evidence to establish the alleged wrongful conduct on the part of the hospital with regard to its failure to maintain adequate emergency power or its failure to protect the facility against floodwaters. The defendant's reliance on Taylor v. Christus Health Southwestern Louisiana, 04-0627 (La.App. 3 Cir. 11/10/04), 886 So.2d 696, in which the court found that medical evidence would be required to establish the proper equipping of a hospital room's private bathroom, is unavailing. Proving a claim based on the complete inability to transfer a patient because of a lack of emergency power, a poorly designed building, or inadequate protection from floodwaters does not require expert medical evidence in our view. Furthermore, while it is certainly conceivable that some particulars of a hospital emergency evacuation plan might reasonably require expert medical evidence, such as under what conditions a patient should or may be transported, the allegations presently before us are that the defendant failed to implement an evacuation plan, failed to have a facility available to receive transferred patients, and failed to have a plan in place in case of a mandatory evacuation. The plaintiffs have not alleged that Mrs. LaCoste's death was caused by individuals with medical training, such as doctors and nurses, who failed to exercise proper medical skills or procedures. Accordingly, there has been no showing, based on the allegations in the petition as amended, that expert medical evidence is necessary to determine whether a particular duty owed to Mrs. LaCoste by the defendant hospital exists or whether that duty was breached.
Not every unintentional tort committed by a qualified health care provider falls within the purview of the LMMA; only those torts that constitute medical malpractice do so. Williamson, p. 9, 888 So.2d at 788. Though the defendant has suggested possible qualities for medical experts who might be nominated to the panel and who could determine the merits of the plaintiffs' claims, it is the Louisiana court that decides whether a tort claim against a qualified medical provider must first be presented to the medical review panel. Thus, the court must determine whether a delict sounds in general negligence or falls within the purview of the LMMA. In this case, the district court resolved that decision in favor of the plaintiffs.
(iii) whether the pertinent act or omission involved assessment of the patient's condition
The defendant contends that a decision "to ride out the storm" was made by the hospital prior to Mrs. LaCoste's admission to the hospital, such that an assessment of her condition by hospital personnel was necessary when she presented herself as the storm approached to weigh the risk of rejecting her admission and requiring her to seek treatment elsewhere. The defendant argues that the real crux of the plaintiffs' allegation is that the hospital should never have admitted Mrs. LaCoste, because, as the defendant explains, the failure-to-evacuate contention and the failure-to-transfer contention are simply other ways of saying that the hospital was negligent in admitting and treating her. The plaintiff asserts the allegations of poor design or inadequate emergency power have no relation to the assessment of Mrs. LaCoste's condition, or any other patient's condition for that matter. The plaintiffs assert their allegations are directed to what, if any, arrangements the hospital had made before the storm, which do not involve the assessment of any particular patient's condition.
*528 This factor weighs in favor of finding that the allegations sound in general negligence. Initially, it should be noted that our review is limited to the allegations themselves, as the defendant did not put on evidence regarding when a decision not to evacuate was made by the hospital or when an assessment of Mrs. LaCoste's condition was made by hospital personnel. Although Mrs. LaCoste may have been on a ventilator when the storm arrived, as alleged in the petition, the pertinent acts or omissions alleged by the plaintiffs were the decisions that would have been made not by medical doctors or nurses, but more logically by engineers or administrators in determining how to design or maintain the building, how much emergency power to have available, and how and when to implement an emergency evacuation. Such engineers or administrators would not have needed to assess Mrs. LaCoste's medical condition to determine whether sufficient emergency power would be available or an evacuation should be implemented. The necessary information, which was or should have been available to the defendant, was that patients, staff, and others were going to occupy the building during a hurricane, and that basic survival necessities would be required, including power and shelter from rising floodwaters. The defendant's contention that the true crux of the petition's allegations, i.e., that she should have been refused admittance to the hospital, is not convincing. The petition, as amended, does not make such an allegation, nor does it allege that Mrs. LaCoste would have been transferred except for a medical decision made by a doctor resulting in the patient's death.
(iv) whether the incident occurred in the context of a physician/patient relationship, or was within the scope of activities which a hospital is licensed to perform
The defendant asserts that attempting to preserve the life of a patient is an activity that a hospital is exclusively licensed to perform. The plaintiffs contend that whether the hospital was properly designed or whether it had adequate emergency power are not issues involving a physician-patient relationship. The plaintiffs point out that there have been no allegations involving a particular physician, nurse, or other health care provider and that the hospital's decisions affected all persons present in the hospital whether employee, patient, or visitor.
This factor also weighs in favor of the finding that the claims alleged in the petition sound in general negligence. Clearly, there is no allegation of an "incident" that occurred during the transfer of this patient, whether or not that transfer was attempted or completed. The incidents cited in the petition were the lack of sufficient emergency power, the building's inadequate design and structure, and the failure to have in place and to implement a plan to transfer patients in the event of a mandatory evacuation, including a location to which they would be transported. It is these incidents that resulted in the complete inability to transfer the patient or to maintain her life-support system, and they did not involve a physician-patient relationship within the meaning of the LMMA. Furthermore, the defendant's argument is not persuasive that the incident occurred within the scope of activities which a hospital is licensed to perform. As noted previously, there is no allegation in the petition that a medical decision by any physician or nurse resulted in the failure to transfer this patient and that such failure resulted in her death.
(v) whether the injury would have occurred if the patient had not sought treatment
This factor is somewhat difficult to evaluate in the context of the factual allegations *529 in this particular case. The defendant argues that the thrust of the plaintiffs' petition is that Mrs. LaCoste did not receive the treatment she was presumably seeking when she presented herself to the hospital. Thus, the defendant asserts, this is a claim for an injury unique to Mrs. LaCoste's status as a patient. The plaintiffs rely on this court's caution in Williamson that a "but for" rationale may be overly facile when considering this factor. 04-0451, p. 14, 888 So.2d at 790. In a general sense, any wrong that a patient suffers in a hospital or doctor's office would not occur if the patient had not first entered the facility. Yet, many claims of medical malpractice resulting from omissions might not qualify as medical malpractice if this factor were applied singly and without relation to the other Coleman factors, because an omission, such as a failure to diagnose, ostensibly leaves a patient in the same position as she would have been in had she never sought treatment in the first place. The defendant's argument that this is a "failure to treat" case is subsumed in the first factor, which considers whether the particular wrong is treatment related or the result of a dereliction of professional skill Given that we have found that the particular wrongs alleged in the petition as amended were neither treatment related nor the result of a dereliction of professional medical skill, the possibility that, had she not been admitted to the hospital, Mrs. LaCoste might have lived or, conversely, that she would have nevertheless died as a result of her pneumonia, or even that her condition would have remained the same, does not weigh greatly in favor of finding that the wrongful conduct alleged in the petition as amended was medical malpractice within the confines of the LMMA.
(vi) whether the alleged tort was intentional
This factor is not an issue in this case, as the court of appeal correctly found that the plaintiffs' allegations of intentional tort need not be submitted to a medical review panel.
The LMMA, in derogation of the general rights of tort victims, grants qualified health care providers certain limitations on liability for unintentional torts that constitute medical malpractice as defined therein. We have applied, in light of the factors set forth in Coleman v. Deno, the LMMA's definition of medical malpractice to the facts alleged in the petition as amended, and we conclude that the claims as alleged therein do not fall within the provisions of the LMMA.[2] Accordingly, because the claims need not be submitted to a medical review panel, the district court correctly overruled the defendant's dilatory exception of prematurity. Therefore, the ruling of the court of appeal is reversed, and the ruling of the district court is reinstated. The case is remanded to the district court for further proceedings.

DECREE
REVERSED; DISTRICT COURT JUDGMENT REINSTATED; REMANDED
VICTORY, J., dissents.
*530 KNOLL, J., dissents and assigns reasons.
WEIMER, J., dissents for the reasons assigned by KNOLL, J.
KNOLL, Justice, dissenting.
I disagree with the majority opinion's interpretation of the Coleman factors as applied to the definition of medical malpractice to the facts alleged in the plaintiffs' petition and amending petition, thereby concluding the alleged claims do not fall within the provisions of the LMMA. To so conclude, the majority opinion reads the lack of sufficient power and the failure "to implement an adequate evacuation plan, fail[ure] to have in place a plan to transfer patients in the event of a mandatory evacuation, and fail[ure] to have a facility available for the transfer of patients" in a vacuum. See at p. 526. Clearly and most telling, Mrs. LaCoste died from the condition for which she was admitted because of lack of treatment and not because she suffered from any other independent injury. To say, as the majority opinion does, that to find the LMMA applies would give the LMMA an expansive reading, is incorrect. Rather, it is just the opposite; a strict application of the Coleman factors leads to the inescapable conclusion that Mrs. LaCoste died from lack of treatment. For the following reasons, I respectfully dissent.
Only what the plaintiffs allege is properly before us, and their allegations, though artfully drafted, present a case in which Mrs. LaCoste died from the hospital's failure to provide life-sustaining care, i.e., failure of treatment. Moreover, and importantly, she died from the illness for which she was admitted, and did not sustain any new injuries.
At the outset, I note with significance this suit is one against a qualified health care provider brought to recover for an injury unique to the decedent's, Mrs. LaCoste's, status as a patient. Mrs. LaCoste died, according to the petitions, because of the failure of the hospital to deliver proper life-support systems through the loss of use of emergency power and the defendant's failure to implement an adequate evacuation plan. Although the plaintiffs assert their allegations sound in simple premises liability and general negligence of hospital administrators, I find the application of the Coleman factors demonstrate that the providing of or failing to provide a life-support system clearly sounds in malpractice as it is integral to the rendering of care and treatment by the health care provider to the patient.
Application of the Coleman Factors
(1) Whether the particular wrong is "treatment related" or caused by a dereliction of professional skill?
Because the wrong alleged is the failure to provide the proper ventilation care Mrs. LaCoste required, I find the allegations do relate to the patient's treatment and an alleged dereliction of professional skill. Contrarily, plaintiffs assert that whether the hospital facility was designed, constructed and/or maintained in such a manner that it lacked sufficient emergency power is a premises liability issue as the location of generators or adequacy of fuel to operate generators in the event of power outages are not issues related to treatment or skill. The plaintiffs urge that the defendant's failure in not ensuring sufficient emergency power is not an act or omission attributable to a particular doctor, nurse, or other individual health care provider. While this argument carries some persuasion, it fails to fully answer the eventual result the power failure caused, namely, the failure to provide treatment. This failure is attributable to the hospital that was obligated to provide *531 the treatment for which the patient was admitted, in this case ventilation.
To say that it is only the power failure that plaintiffs rest their allegations upon is overly simplistic and reading the allegation in a vacuum. The power failure is inherently integral for the plaintiffs to prove their allegations for survival and wrongful death damages. This result is treatment related in that the ventilator could not function without power, which, according to the plaintiffs, ultimately caused Mrs. LaCoste's death. To restrict the application of this factor to only the lack of power without including the result of what the lack of electricity caused is not applying this factor correctly. A proper analysis of this factor clearly demonstrates the wrong alleged is "treatment related." Applying this Coleman factor, I find the alleged "treatment related" failure weighs in favor of the application of the LMMA.
(2) Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached?
The allegations focus on the alleged failure to evacuate the facility, which raise an issue that will likely be influenced by expert medical testimony. As defendant has persuasively argued, emergency preparedness in the field of health care is vastly dissimilar to emergency preparedness in other areas. Medical experts, specializing in the field of Disaster Medicine, including triage, will likely be essential in determining the standard of care unique to the implementation of a program such as defendant's emergency plan. Moreover, only physicians can issue transfer and acceptance orders, and negligence regarding transfer decisions and planning in evacuations cannot likely be established without expert medical testimony. See e.g., Coleman, 01-1517 at p. 18, 813 So.2d at 316 (patient transfer case). The plaintiffs argue that it is the failure to have a plan for evacuation that caused the harm. This claim, however, cannot be analyzed in a vacuum, but must relate to the plan for evacuation of Mrs. LaCoste, who was a critical care patient dependent on a ventilator. It reasonably follows that this claim concerning the evacuation of a critical care patient would of necessity require expert testimony regarding the standard of care as it is not likely lay people could speak to the feasibility of accomplishing the specialized evacuation of this ventilated patient.
The plaintiffs further argue a medical professional is not qualified to provide evidence concerning whether the facility was deficiently designed, whether the generators should have been enclosed behind a retaining wall, or whether the hospital lacked sufficient power. According to the plaintiffs, the failure to make arrangements before the storm for post-storm evacuation of patients involved business decisions. However, expert medical testimony will be needed to explain the cause of the injury and any breach of care relating to the failure of treatment for Mrs. LaCoste as well as to explain the plan and implementation of any plan and evacuation procedures, which, according to the plaintiffs' petition, would necessarily include transferring patients to other facilities. Therefore, I find this factor as well weighs in favor of the application of the LMMA.
(3)Whether the pertinent act or omission involved assessment of the patient's condition?
Although the plaintiffs assert that the allegations that defendant lacked sufficient power, that the facility was poorly designed, and that defendant failed to implement an adequate evacuation plan with facilities for transfer of patients have nothing to do with assessment of any patient's condition and are business decisions, I find the alleged wrongdoing inherently involved *532 a medical assessment and evaluation of Mrs. LaCoste's condition. Transporting a patient from one facility to another requires a physician's order from the transferring facility and an admitting order from the receiving facility, which necessarily includes an assessment of the patient's condition. See Coleman, 01-1517 at p. 18, 813 So.2d at 316. As the record demonstrates, the defendant evaluated Mrs. LaCoste's condition when she was first admitted, and it likewise follows that any post-storm transfer would inevitably involve patient assessment and evaluation and potentially triage. It is also likely that a patient's condition could affect the decision to evacuate if certain emergency equipment, such as a back-up ventilator, would be required. Further, failure to transfer is akin to the inverse of the alleged wrongdoing in Coleman involving the transfer of a patient, which this Court found sounded in malpractice. Significantly, Mrs. LaCoste's initial assessment indicated the need for ventilation, and it was the failure to provide the assessed treatment that, according to the petition, resulted in her death. Again, I find this factor weighs in favor of application of the LMMA.
(4) Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform?
Despite plaintiffs' assertions that the defective design of the hospital and failure to plan in advance for post-storm evacuation are not issues that involve the physician-patient relationship, I find the omission in this case most likely occurred in the context of the physician-patient relationship. Transfer of a patient, especially one in need of critical care, is not conducted by an engineer, a design professional, or an administrator. Hospitals and their administrators do not admit, transfer, or discharge patients. Physicians are exclusively licensed to perform these functions, and decisions regarding transfers are no less medically oriented than decisions about the types of medicines a patient needs. Moreover, physicians and hospitals are licensed to perform life sustaining care, in this case the ventilation of a patient. It is the failure of the treatment and care for which the hospital was licensed to perform that is at issue in this case and weighs this factor in favor the defendant's position.
(5) Whether the injury would have occurred if the patient had not sought treatment?
If Mrs. LaCoste had not been taken to the hospital for treatment of pneumonia and placement on a ventilator, she would not have been subject to the alleged failure of lifesaving care. The claim for her wrongful death is based on failure to obtain or provide the treatment she sought. Moreover, such treatment and the equipment, i.e., ventilator, employed are unlike the malfunctioning wheelchair in Williamson and the malfunctioning hospital bed in Sewell in that the treatment and the ventilator are not accessible to the visiting public or to any and all patients. They are for critical care patients, like Mrs. LaCoste, who require life sustaining care, contrary to plaintiffs contention that the wrongful conduct adversely affected everyone in the hospital, even those not seeking treatment.
Moreover, in Williamson, the injury caused by the defective wheelchair had nothing to do with the condition for which the patient sought treatment or with the treatment of the patient. The accident produced an independent cause of action and injury, which could have occurred even if the patient had not sought treatment. In this case, however, the lack of power accelerated the condition for which Mrs. LaCoste was admitted and sought treatment *533 and, thus, directly affected the condition and treatment of this patient. Therefore, I find this factor as well weighs in favor of the defendant's position.
(6) Whether the alleged tort was intentional?
This factor is not an issue in this case, as the court of appeal agreed that the plaintiffs' intentional tort allegations need not be submitted to a medical review panel and correctly remanded the case for further proceedings on that issue.
Accordingly in my view, under the Coleman test, the totality of the allegations are weighted in favor of our finding that the plaintiffs' claims sound in medical malpractice and fall within the purview of the LMMA, requiring this matter first be submitted to a medical review panel. Therefore, I find the court of appeal correctly sustained the exception of prematurity and remanded for further proceedings on the issue of intentional tort.
In conclusion, with the assistance of the Coleman factors, I have applied the LMMA's definition of medical malpractice to the allegations set forth in plaintiffs' petitions, and I conclude that the claims therein do fall within the provisions of the LMMA. Accordingly, I would affirm the judgment of the court of appeal granting the exception of prematurity and remand this matter for further proceedings on the issue of intentional tort.
NOTES
[1] As amended, the petitions specifically alleged:

During Hurricane Katrina and its aftermath, Methodist Hospital lost the use of electrical power and emergency power resulting in the failure of life support systems used to sustain the lives of individuals like Mrs. LaCoste, who were dependent on said systems.
The loss of use of emergency power and the failure of defendants to implement an adequate evacuation plan were a direct and proximate cause of Mrs. LaCoste's wrongful death.
The above described acts were caused through the negligence and intentional acts of defendants, their officers and agents in the following non-exclusive particulars:
(a) by designing, constructing and/or maintaining a facility in such a manner that the hospital did not have sufficient emergency power to sustain life support systems;
(b) by designing, constructing and/or maintaining a facility in such a manner that allowed flood waters to enter the structure, thus endangering the safety of patients;
(c) failure to implement an adequate evacuation plan;
(d) failure to have a facility available for transfer of patients; and
(e) failure to have in place a plan to transfer patients in the event of mandatory evacuation.
[2] As the appellate court noted, whether the case is one in medical malpractice or negligence will ultimately be decided at trial by the trier of fact. Today we are concerned only with whether the factual allegations contained in the petition as amended assert claims that fall within the purview of the LMMA and therefore must first be presented to a medical review panel under the procedures of the LMMA. That a fact-finder with more evidence before it may ultimately conclude that the defendant's conduct was medical malpractice does not control our review of the instant exception of prematurity, which is, as we have explained, limited to the factual allegations in the amended pleadings.