972 So.2d 387 (2007)
Leslie DUPLESSIS
v.
TULANE UNIVERSITY d/b/a Tulane University Hospital and Clinic d/b/a Tulane Institute of Sports Medicine.
No. 2007-CA-0647.
Court of Appeal of Louisiana, Fourth Circuit.
November 21, 2007.
*388 William E. Mura, Jr., Warren A. Forstall, Jr., New Orleans, LA, for Plaintiff/Appellant.
Ambrose K. Ramsey, III, Curry & Friend, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge DENNIS R. BAGNERIS, SR., Judge TERRI F. LOVE, and Judge LEON A. CANNIZZARO, JR.).
DENNIS R. BAGNERIS, SR., Judge.
Plaintiff, Leslie Duplessis, appeals a trial court judgment, which granted defendant's, University Healthcare System, L.C., d/b/a Tulane University Hospital and Clinic, exception of prematurity. For the following reasons, we reverse the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY
On June 8, 2006, plaintiff filed this suit in the First City Court for the City of New Orleans against Tulane University d/b/a/ Tulane University Hospital and Clinic d/b/a Tulane Institute of Sports Medicine[1]. The petition alleges that plaintiff was injured on June 10, 2005, when an employee, who was performing an x-ray procedure, dropped the x-ray template onto her right foot and ankle.
On July 7, 2006, plaintiff filed a first supplemental and amending petition for damages and named as defendant the University Healthcare System, L.C. The first supplemental and amending petition alleged that University Healthcare System is the owner of Tulane University Hospital and Clinic and that the entity is jointly liable with Tulane University. University Healthcare System responded by filing a dilatory exception of prematurity to the plaintiff's petition on the basis that the plaintiff's claims sounded in medical malpractice, thus falling within the parameters of the Louisiana Medical Malpractice Act (LMMA) and, therefore, requiring review by a medical review panel before being brought to the First City Court.
Thereafter, plaintiff filed a second supplemental and amending petition for damages and removal asserting that the x-ray cassette fell onto her foot on its own due to a defect in the x-ray machine. Plaintiff alleges that the cause of this detachment was the failure of the University Healthcare System's maintenance department personnel to correctly repair and/or maintain the device after having been forewarned that it required repair. Plaintiff amended her petition to assert that her damages exceeded the jurisdictional limits of the First City Court and requested that the matter be removed to Civil District Court for the Parish of Orleans.
After the case was removed to District Court, the trial court granted University Healthcare System's dilatory exception of prematurity and dismissed all claims *389 against it. Plaintiff now appeals this final judgment.
DISCUSSION
On appeal, plaintiff argues that this case should be governed by the principles of general tort law and not by the LMMA because (1) her injury was due to the failure of the University Healthcare System's maintenance personnel to properly maintain, inspect, and/or repair the device that caused the injury despite having been forewarned of the dangerous/defective condition of the device, and (2) her injury was not caused by the negligence of a qualified health care provider while performing an action arising from medical care or treatment; rather, her injury resulted from an improperly maintained x-ray template holding device.
We must determine whether the plaintiff was required to convene a medical review panel to review her claim against the University Healthcare System prior to filing her suit against it. This is a question of law as well as of fact. Therefore, we must conduct a de novo review of this case to determine whether the trial court's ruling on the dilatory exception of prematurity was legally correct. See, e.g., Cleco Evangeline, LLC v. Louisiana Tax Commission, 2001-2162, p. 3 (La.4/3/02), 813 So.2d 351, 353, where the Louisiana Supreme Court stated with respect to an issue of law being reviewed on appeal that "[w]e review the matter de novo, and render judgment on the record, without deference to the legal conclusions of the tribunals below."
The LMMA was established by the Louisiana Legislature to govern all claims of medical malpractice asserted against healthcare providers who are qualified enrollees with the Louisiana Patient's Compensation Fund. The LMMA, under La. R.S. 40:1299.41(A)(8), defines "malpractice" in pertinent part, as:
any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.
The LMMA, under La. R.S. 40:1299.41(A)(7), defines "tort" as:
"Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
The LMMA, under La. R.S. 40:1299.41(A)(9), defines "health care" as:
"Health care" means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf or a patient during the patients medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components.
*390 The Louisiana Supreme Court, in Lacoste v. Pendleton Methodist Hospital, L.L.C. has recently addressed this issue and it "emphasized that the LMMA and its limitations on tort liability for a qualified health care provider apply only to claims `arising from medical malpractice,' and that all other tort liability on the part of the qualified health care provider is governed by general tort law." (emphasis in original). Lacoste, 07-0008, p. 2 (La.9/5/07), 966 So.2d 519. Further, the Louisiana Supreme Court stated that because the LMMA's limitations on the liability of health care providers were created by special legislation in derogation of the rights of tort victims, then any ambiguity should be resolved in favor of the plaintiff and against finding that the tort alleged sounds in medical malpractice. Id. at 521.
In Coleman v. Deno, 01-1517, pp. 17-18, (La.1/25/02), 813 So.2d 303, 315-16, the Louisiana Supreme Court set forth a six-part test to determine whether a claim sounds in medical malpractice and must proceed in accordance with the LMMA or whether the claim sounds in general negligence and should proceed under general tort law.
(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,
(3) whether the pertinent act or omission involved assessment of the patient's condition,
(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
(5) whether the injury would have occurred if the patient had not sought treatment, and
(6) whether the tort alleged was intentional.
Accordingly, we now apply the Coleman factors to the allegations asserted in the plaintiff's petition, as amended, which we accept as true for the purpose of resolving this issue.
(1) Whether the particular wrong is "treatment related" or caused by a dereliction of professional skill?
The University Healthcare System asserts that the falling of an x-ray cassette positioned there by the x-ray technician during the course of an x-ray is definitely "treatment related" because x-ray exams and the placement of an x-ray cassette in an x-ray machine during an x-ray exam are conducted only by licensed x-ray technicians, and not by unskilled employees. The plaintiff contends that the cassette was not dropped by the technician but fell from the holder device and that the maintenance department was negligent when it failed to repair the device after being warned of its defective condition. Thus, plaintiff argues that no professional skill or licensing is required of a hospital to maintain or repair the x-ray cassette holding device. We agree with plaintiff that the particular wrong alleged in her amended petition, i.e. that her injury "was due to the failure of Defendants maintenance personnel to properly maintain, inspect, and/or repair the device having been forewarned of the dangerous/defective condition of the device," does not result from any dereliction of professional skill that is treatment-related. Accordingly, we find this factor weighs in favor of plaintiff's position that the allegations sound in general negligence.
*391 (2) Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached?
The University Healthcare System asserts that the placement of an x-ray cassette in the x-ray machine is part of the entire process of x-raying a patient which is within the realm of professional knowledge of a licensed x-ray technician, and therefore, expert testimony is required to prove wrongdoing. The plaintiff contends that expert medical evidence will not be required to determine whether the standard of care to be taken in the repair and maintenance of the x-ray cassette holding device was breached. We, too, find no medical expert will be needed to determine whether the maintenance personnel was negligent when it failed to repair the x-ray device after having been forewarned of its dangerous condition. We find this factor as well weighs in favor of finding the allegations sound in general negligence.
(3) Whether the pertinent act or omission involved assessment of the patient's condition?
Although the University Healthcare System asserts that the diagnostic procedure of x-raying a patient involves an examination of the assessment of plaintiff's condition, we find the pertinent acts or omissions in this case do not implicate or require an assessment of plaintiff's medical condition. Therefore, we find this factor weighs in favor of finding the allegations sound in general negligence.
(4) Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform?
The University Healthcare System argues that the rendition of x-ray services is definitely within the scope of activities which a hospital is licensed to perform. Plaintiff contends that the repair/maintenance of the x-ray cassette device is not an activity which requires licensing from the state. The amended petition alleges that plaintiff's injury was due to the failure of University Healthcare System's maintenance personnel to properly maintain, inspect and/or repair the x-ray device that was used to hold the x-ray film cassettes rather than in the context of a physician-patient relationship. Therefore, we find this factor weighs in favor of finding the allegations sound in general negligence.
(5) Whether the injury would have occurred if the patient had not sought treatment?
The University Healthcare System alleges that the falling of the x-ray cassette positioned by the x-ray technician onto plaintiff's leg would not have occurred had she not been undergoing x-rays. Thus, the University Healthcare System argues that the patient's injury was directly related to her medical treatment. However, plaintiff argues that a visitor to a hospital, who was near the faulty equipment, could have suffered the same injury. We agree. We find this factor, too, weighs in favor of finding the allegations sound in general negligence.
(6) Whether the tort alleged was intentional?
This factor is not an issue in this case as there are no allegations that the actions or inactions of the University Healthcare System or its staff were intentional.
We have applied the Coleman factors to the facts alleged in the plaintiff's petition as amended (i.e. allegations regarding the defective nature of the x-ray holder device due to lack of inspection, repair, and/or maintenance of the device) and we conclude that the claims as alleged do not fall within the provisions of the LMMA. Accordingly, because the claims do not *392 need to be submitted to a medical review panel, we find the trial court erred when it granted the exception of prematurity filed by the University Healthcare System. For these reasons, we reverse the judgment of the trial court.
REVERSED.
NOTES
[1] Defendant's proper name is University Healthcare System, L.C. d/b/a/ Tulane University Hospital & Clinic.