RUTH BLAZIO        *        NO. 2019-CA-0753

VERSUS        *

       COURT OF APPEAL

OCHSNER CLINIC        *
FOUNDATION D/B/A        FOURTH CIRCUIT
OCHSNER HEALTH SYSTEM,        *
RENEE Y. MEADOWS, M.D.,        STATE OF LOUISIANA
KEONDRA N. LAFRANCE,        * * * * * * *
R.N., DAVID M. MILLER, R.N.,
AND JOHN DOE

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-05952, DIVISION "F"
Honorable Christopher J. Bruno, Judge
* * * * * *
**Judge Roland L. Belsome**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Joy Cossich Lobrano)

Michael C. Palmintier
Jonathan E. Mitchell
deGRAVELLES & PALMINTIER, L.L.P.
618 Main Street
Baton Rouge, LA 70801-1910

       COUNSEL FOR PLAINTIFF/APPELLANT

Peter E. Sperling
James P. Waldron
FRILOT L.L.C.
3700 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3700

       COUNSEL FOR DEFENDANT/APPELLEE

       **AFFIRMED IN PART; REVERSED IN PART**
       **MARCH 4, 2020**

In this medical malpractice lawsuit, the Plaintiff, Ruth Blazio, seeks review of the trial court's judgment granting the exception of prematurity filed by Defendants, Ochsner Clinic Foundation, Renee Y. Meadows, M.D., Keondra Lafrance, R.N, and David Miller, R.N.  The trial court's judgment centered on its determination that the Plaintiff's claims fall under the Louisiana Medical Malpractice Act[1] (MMA) and first require a review from a medical review panel.  Since one of Plaintiff's claims is not subject to the MMA, the trial court's ruling is affirmed, in part, and reversed, in part.

## FACTS AND PROCEDURAL HISTORY

Plaintiff filed a wrongful death and survival action contending that her daughter, Abigail Blazio, died as a result of negligent in-patient treatment during her hospital stay.  Her petition for damages alleges that Abigail was admitted into the hospital on June 12, 2017, undergoing treatment as a result of severe abdominal pain and diabetic gastroparesis associated with type 1 mellitus.  On June 15, Abigail was discovered lying on the floor of her hospital room, unsure why she had

---

[1] La. R.S. 40:1231.1 *et seq.*

fallen.  As a result, a camera was placed in her room so the staff could monitor her condition.  Later, at around 10:20 p.m., on June 16, 2017, a family member called the nurse's station because she could not reach Abigail by phone.  After entering her room, hospital staff discovered that Abigail was locked inside of her bathroom.  After some time, the doors were removed from the hinges.  Abigail was on the floor, with no pulse.  Resuscitation attempts were unsuccessful and Abigail was pronounced dead at 11:04 p.m.  Plaintiff's petition further alleges numerous negligent acts of the hospital and its medical[2] and non-medical employees, which caused her damages.

In response to Plaintiff's petition, Defendants filed an exception of prematurity contending that all of the claims in the petition fell within the purview of the MMA, requiring consideration of a medical review panel before litigation commences.  After hearing arguments, the trial court granted Defendants' exception of prematurity and dismissed the lawsuit without prejudice.  This appeal followed.

---

[2] As to the hospital, Ochsner Clinic Foundation d/b/a Ochsner Health System, and/or its employee, only identified as John Doe, Plaintiff alleges the following substandard care:

    a. Removing the camera monitor which had been placed in decedent's room on June 15, 2017 to more closely monitor her condition;
    b. Placing a door lock on the bathroom door to a hospital room without a way or a means to enter the bathroom timely in an emergency situation;
    c. Generally, the failure to act with the required degree of care commensurate with the existing situation.

As to the hospital doctor and nurses, Plaintiff alleges the following substandard care:

    a. Failure to properly monitor patient who has a history of falling:[sic]
    b. Failure to properly assess patient's condition;
    c. Failure to properly diagnose, recognize, and/or timely react to plaintiffs condition;
    d. Generally, the failure to act with the required degree of care commensurate with the existing situation.

## STANDARD OF REVIEW

La. C.C.P. art. 926 provides for the dilatory exception of prematurity, which questions whether the cause of action has matured to the point that it is ripe for judicial determination. *Williamson v. Hospital Service Dist. No. 1 of Jefferson*, 04-0451, p. 4 (La. 12/1/04), 888 So.2d 782, 785. An action that is brought before the right to enforce it has accrued is deemed premature. *Id.* Prematurity is determined by the facts existing at the time the suit is filed. *Sevier v. U.S. Fidelity & Guar. Co.*, 497 So.2d 1380, 1382 (La. 1986). Evidence may be introduced to support or controvert the exception when the grounds do not appear from the petition. La. C.C.P. art. 930. However, where no evidence is presented at the trial of a dilatory exception, like prematurity, the court must render its decision on the exception based upon the facts as alleged in the petition, and all allegations therein must be accepted as true. *LaCoste v. Pendleton Methodist Hosp., L.L.C.*, 07-0008, 07-0016, p. 8 (La. 9/5/07), 966 So.2d 519, 525.

Under the MMA, a medical malpractice claim against a private qualified health care provider is subject to dismissal on an exception of prematurity if the claim has not first been presented to a medical review panel. La. R.S. 40:1231.8(A)(1)(a); *Williamson*, 04-0451 at p. 4, 888 So.2d at 785. The exception is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for decision by a medical review panel before filing suit against the provider. La. C.C.P. art. 926; *Spradlin v. Acadia–St. Landry Medical Foundation*, 98-1977, p. 4 (La. 2/29/00), 758 So.2d 116, 119. The burden of proving prematurity is on the defendant health care provider, who must show that it is entitled to a medical review panel because

3

the allegations of the plaintiff's petition fall within the provisions and purview of the MMA. *Williamson*, 04-0451 at p. 4, 888 So.2d at 785.

To be covered under the MMA, the negligent act complained of must be related to medical treatment. *Richard v. Louisiana Extended Care Centers, Inc.*, 02-0978, p. 13 (La. 1/14/03), 835 So.2d 460, 468.[3] The MMA and its limitations on tort liability for a qualified health care provider apply only to claims "arising from medical malpractice;" all other tort liability on the part of the qualified health care provider is governed by general tort law. *LaCoste*, 07-0008 at pp. 6-7, 966 So.2d at 524 (citations omitted). Consequently, we conduct a *de novo* review of the trial court's grant of the dilatory exception of prematurity because the issue of whether a claim sounds in medical malpractice involves a question of law. *Duplessis v. Tulane University*, 07-0647, p. 3 (La. App. 4 Cir. 11/21/07), 972 So.2d 387, 389.

---

[3] La. R.S. 40:1231.1(A)(13) of the LMMA defines "malpractice" as follows:

> [A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or sued on or in the person of a patient.

The LMMA further defines "tort" and "health care" as follows:

> "Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.

> "Health care" means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components.

*See* La. R.S. 40:1231.1(A)(22) and La. R.S. 40:1231.1(A)(9), respectively.

4

## DISCUSSION

On appeal, Plaintiff asserts that the trial court erred in granting the exception of prematurity as to her three claims against the hospital and John Doe, an unidentified employee. Those claims are set forth in Paragraph 7 of the Petition for damages:

   a. Removing the camera monitor which had been placed in decedent's room on June 15, 2017 to more closely monitor her condition;

   b. Placing a door lock on the bathroom door to a hospital room without a way or a means to enter the bathroom timely in an emergency situation;

   c. Generally, the failure to act with the required degree of care commensurate with the existing situation.

As such, the only issue before this Court is whether any of the aforementioned claims sound in general negligence, thus falling outside of the MMA.

The MMA is special legislation in derogation of the general rights available to tort victims and therefore must be strictly construed. *LaCoste*, 07-0008 at pp. 7, 11, 966 So.2d at 524. In *Coleman v. Deno*, the Louisiana Supreme Court set forth six factors to consider when determining whether certain conduct by a qualified health care provider[4] constitutes "malpractice" as defined under the LMMA:

   (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,

   (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,

   (3) whether the pertinent act or omission involved assessment of the patient's condition,

   (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,

---

[4] Plaintiff does not contest that Ochsner hospital is a qualified health care provider.

(5) whether the injury would have occurred if the patient had not sought treatment, and

(6) whether the tort alleged was intentional.

*Id*., 01-1517, pp. 17-18 (La. 1/25/02), 813 So.2d 303, 315-16.  If the allegations sound in medical malpractice, the case must proceed in accordance with the protocol set forth in the MMA.  If, on the other hand, the allegations sound in general negligence, the case should proceed under general tort law. *Williamson*, 04-0451 at p. 5, 888 So.2d at 786.  If an ambiguity exists regarding whether or not the alleged tort sounds in medical malpractice, it is to be resolved in favor of the plaintiff.  *LaCoste*, 07-0008 at p. 7, 966 So.2d at 524.

After applying the *Coleman* factors to the present case, we find that the claims set forth in Paragraph 7(a) and (c) fall within the MMA, while the claim set forth in 7(b) constitutes general negligence, which falls outside of the scope of the MMA.

**7(a) REMOVAL OF THE CAMERA MONITOR**

As to the first claim, Paragraph 7(a) of Plaintiff's petition alleges that Ochsner hospital and/or John Doe employee breached the standard of care when it/he removed the camera monitor placed in Abigail's room in order to better monitor her condition.  First, the negligent removal of a camera monitor specifically installed to observe a patient is treatment-related since it involves a dereliction in the patient's health care.  Next, expert medical evidence is necessary to determine the appropriate standard of care and whether the standard of care was breached when the camera was removed.  Finally, the record is devoid of any facts

6

upon which to resolve *Coleman* factors three through six since there is no evidence concerning the circumstances under which the camera was removed.[5]

Plaintiff argues that the removal of the camera was not "treatment related" since she does not allege medical staff removed the camera. Therefore, she concludes it did not occur in the context of a patient-physician relationship. Even if this assertion is correct, which is unclear due to a lack of evidence in the record, nothing in the plain language of the MMA limits its application to direct treatment by a physician. *Dupuy v. NMC Operating Co.*, 15-1754, p. 11 (La. 3/15/16), 187 So.3d 436, 443. In particular, the statute includes injuries that are "based on health care or professional services rendered ... by a health care provider, to a patient ... ." La. R.S. 40:1231.1(A)(13). "The use of the broad term 'health care provider,' rather than simply 'physician' or 'medical doctor,' necessarily includes actions which are treatment related and undertaken by [a] Hospital in its capacity as a health care provider-even if those actions are not performed directly by a medical professional." *Dupuy*, 15-1754 at p. 11, 187 So.3d at 443.

In *Dupuy*, the Louisiana Supreme Court found that the hospital's failure to properly maintain and service equipment used in the sterilization of surgical instruments fell within definition of "health care" under the MMA, even if maintenance and service of equipment was performed by plant operations rather than physicians. Thus, the Court found that the patient was first required to present his claims to medical review panel.

Similarly, here, the hospital's alleged negligence in removing a camera monitor installed to observe a patient in the context of her treatment falls within the definition of "health care" under the MMA, even if the camera was removed by

---

[5] Factor five does not appear to be relevant to this issue.

a non-medical hospital employee rather than a physician. Under these circumstances, the claim set forth in 7(a) falls under the purview of the MMA.

## 7(c) FAILURE TO ACT WITH THE REQUIRED DEGREE OF CARE

Turning to the second claim, Paragraph 7(c) of Plaintiff's petition alleges Ochsner hospital and/or John Doe employee breached the standard of care by failing to act with the degree of care commensurate with the situation. While Plaintiff alleges a general breach in the standard of care, in her brief, she repeatedly describes the failure of Abigail's doctors and nurses to properly monitor her as ordered. First, such a failure is directly related to Abigail's health care and would require an expert witness concerning the requisite standard and breach of care. In addition, as alleged by Plaintiff, it occurred in the context of the patient-physician relationship. Accordingly, this claim clearly falls within the ambit of the MMA.

## 7(b) DEFECTIVE DOOR LOCK

Finally, as to the third claim, Paragraph 7(b) of Plaintiff's petition alleges Ochsner hospital and/or John Doe employee breached the standard of care by placing a door lock on the bathroom door to a hospital room without a way or a means to enter the bathroom timely in an emergency situation. This claim relates to the deficient design of the hospital and lack of emergency procedure. As a result, it is not "treatment related" or related to the dereliction of professional medical skill. It would not require expert medical testimony or an assessment of the patient's condition. However, since hospitals are tasked with setting forth the operating standards in relation to construction and housing conditions in order to ensure the safety of patients, this claim does fall within the scope of activities a

hospital is licensed to perform.  *See* La. R.S. 40:2109.[6]  Nevertheless, any ambiguity as to whether a claim falls under the MMA should be resolved in favor of the Plaintiff.  *Lacoste*, 07-0008 at p. 7, 966 So.2d at 524.

In *Lacoste*, *supra*, the Louisiana Supreme Court held that claims concerning a hospital's negligent administrative decisions,[7] involving defects in design and emergency procedure, sounded in general negligence rather than malpractice. *Lacoste*, 07-0008 at p. 10, 966 So.2d at 526.  Thus, the Court held that the claims did not fall within the MMA.  *Id.*, 07-0008 at p. 16, 966 So.2d at 529.

Like the design defect and lack of emergency protocol claims in *Lacoste*, Plaintiff's claim in Paragraph 7(b), sounds in premise liability or general negligence. Thus, Plaintiff's claim in Paragraph 7(b) does not fall under the MMA. Therefore, a medical review panel is not necessary.

Given the foregoing, Plaintiff's claims in Paragraph 7(a) and (c) fall within the ambit of the MMA, while her claim in Paragraph 7(b) constitutes general negligence falling outside of the scope of the MMA.  Accordingly, the trial court's

---

[6] La. R.S. 40:2109 states in pertinent part:
> A. In order to carry out the purposes of this Part, the Louisiana Department of Health, subject to the provisions of R.S. 40:2108(D), shall, after a public hearing, adopt rules, regulations, and minimum standards, which shall have the effect of law, governing the operation and maintenance of hospitals; thereafter, in accordance with the same procedure the department may modify, amend, or rescind such rules, regulations, and minimum standards.
> B. The minimum standards adopted by the secretary governing operation and maintenance of hospitals may contain regulations in relation to:
> (1)(a) **Construction of hospital buildings**, facilities, and equipment, including regulations on plumbing, heating, lighting, ventilation, fire protection, fire prevention devices and equipment, floor space, and other housing conditions **designed to ensure the health, safety, and comfort of patients**. (emphasis added).

[7] The plaintiff in *Lacoste* made the following negligence claims: (1) failure to design, construct, and/or maintain its facility to provide emergency power to sustain life support systems during and in the aftermath of Hurricane Katrina, (2) failure to implement adequate evacuation plans, and (3) failure to have facilities available to transfer patients in emergency or mandatory evacuations,

judgment is reversed, in part, as to sustaining the exception of prematurity on

Plaintiff's claim in Paragraph 7(b).  The judgment is affirmed in all other respects.


**AFFIRMED, IN PART; REVERSED, IN PART**