LOLLEY, J.
| ¡.Plaintiffs, Mark Heacock, individually and as administrator of the estate of his minor child Curtis Heacock, and Margaret Heacock, appeal the judgments of the Fourth Judicial District Court, Parish of Ouachita, Louisiana, which dismissed their claims pursuant to the exceptions of prematurity by the defendants, Douglas Wayne Cook, M.D. and Palmetto Addiction Recovery Center, Inc. The two actions from the trial court have been consolidated *626 on appeal. For the following reasons, we reverse one judgment of the trial court and affirm the other.
Facts
|sOn December 24, 2005, Margaret Heacock was admitted to Palmetto Addiction Recovery Center, Inc. (“Palmetto”) for inpatient treatment of her substance abuse. She was subsequently discharged in May 2006, and began outpatient treatment, which continued through January 18, 2008. Her treating physician, Dr. Douglas Cook (“Dr. Cook”), was also the medical director at the facility. The plaintiffs claim that during Mrs. Heacock’s treatment at Palmetto, Dr. Cook entered into an inappropriate, sexual relationship with her.
On January 16, 2009, the plaintiffs filed two separate petitions in the trial court, and later a petition for medical review with the Louisiana Patients’ Compensation Fund against Dr. Cook and Palmetto. In one lawsuit (4th Judicial District Proceeding No. 09-0208) the plaintiffs allege that Dr. Cook committed intentional torts against Mrs. Heacock (the “intentional tort lawsuit”). In the other lawsuit (4th Judicial District Proceeding No. 09-0204) they claim that Dr. Cook committed negligent acts against Mrs. Heacock (the “negligent tort lawsuit”). As to Palmetto, the plaintiffs make virtually the same allegations in both lawsuits, claiming that Palmetto had knowledge of Dr. Cook’s own chemical dependency requiring close supervision and monitoring which he did not receive. They also claim |4Palmetto was liable under the doctrine of respondeat superior for the “negligent actions” of Dr. Cook and list various particular reasons for which Palmetto is so liable.
In both lawsuits, the defendants filed exceptions of prematurity, seeking to have all claims dismissed in the trial court and brought before the medical review panel. After a joint hearing on the exceptions, the trial court determined that, for the most part, the plaintiffs’ claims sounded in medical malpractice and were, therefore, premature and granted the exceptions. A judgment was rendered in each proceeding dismissing the plaintiffs’ claims without prejudice, and the plaintiffs filed an appeal in each proceeding.[1]
Discussion
On appeal, the plaintiffs argue that the trial court erred in granting the defendants’ exceptions of prematurity. The trial court determined that the majority of the plaintiffs’ claims fell under the purview of the Louisiana Medical Malpractice Act (“LMMA”). As stated, these proceedings deal with claims that Dr. Cook and Palmetto committed both intentional and negligent torts against the plaintiffs as a result of Dr. Cook’s sexual relationship with Mrs. Heacock. The plaintiffs take the position that although they have a Impending LMMA claim, the nature of their allegations is such that the claims fall outside the ambit of the LMMA, and the exceptions of prematurity should have been denied.
Louisiana C.C.P. art. 926 provides for the dilatory exception raising the objection of prematurity. The exception of prematurity addresses the issue of whether a judicial cause of action has yet come into existence because a prerequisite condition has not been fulfilled. White v. St. Elizabeth B.C. Bd. of Directors, 43,329 (La.App.2d Cir.06/04/08) 986 So.2d 202, writ denied, 2008-1440 (La.10/10/08), 993 So.2d 1284. An action will be deemed premature when it is brought before the right to enforce it has accrued. Prematurity is *627 determined by the facts existing at the time the lawsuit is filed. Id.
Specifically, under the LMMA, a medical malpractice claim against a private qualified health care provider is subject to dismissal on an exception of prematurity if such claim has not first been presented to a medical review panel. La. R.S. 40:1299.47(A); LaCoste v. Pendleton Methodist Hosp., L.L.C., 2007-0008 (La.09/05/07), 966 So.2d 519. This exception is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for | ficonsideration by a medical review panel before filing suit against the provider. La. C.C.P. art. 926; LaCoste, supra. The burden of proving prematurity is on the exceptor. Id.
Notably, the LMMA applies only to “malpractice” as defined by the statute; other tort liability on the part of a qualified health care provider is governed by general tort law. Coleman v. Deno, 2001-1517 (La.01/25/02), 813 So.2d 303. Louisiana R.S. 40:1299.41(A)(13) and (22) provide the following definitions for malpractice and tort, respectively:
“Malpractice” means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.
⅜ ⅜ ⅜ ⅜ jjj ⅜
“Tort” means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in ^rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
Thus, by definition “malpractice” does not include the intentional acts of the health care provider.
As already explained, the plaintiffs filed two separate lawsuits against Dr. Cook and Palmetto: the intentional tort lawsuit and the negligent tort lawsuit. As to Palmetto, the claims in both lawsuits are virtually identical. Likewise, pertaining to Dr. Cook, the allegations in the two lawsuits are very similar. Several of the claims against Dr. Cook relate directly to a negligent deviation from the standard of care and treatment rendered to Mrs. Heacock, thus being malpractice claims. However, several of the claims are not “malpractice” as defined by the LMMA and should be addressed at the trial court, regardless of whether the plaintiffs are proceeding with a petition for medical review with the Louisiana Patients’ Compensation Fund. The trial court determined that “at least a portion” of the plaintiffs’ claims fell within the LMMA and granted the exceptions of prematurity in the interest of judicial economy. Although separate judgments were | ¿rendered for each lawsuit, the trial court made no distinction *628 between the two in its reasons, and the judgments are virtually identical.

Intentional Torts

As to the intentional claims against Dr. Cook, the plaintiffs claim that he intentionally:
1) became émotionally, physically and sexually involved with Mrs. Heacock through January 18, 2008;
2) took advantage of her fragile emotional condition;
3) used his position of treating physician and therapist to manipulate Mrs. Heacock;
4) prescribed to his patient, Mrs. Heac-ock, medications' which caused physical and emotional harm;
5) advised and counseled patient in a manner to cause her harm;
6) inflicted sexual battery and assault on Mrs. Heacock.
The statutory law leaves no doubt that “malpractice” under the LMMA does not include intentional torts. See La. R.S. 40:1299.41(A)(13). However, examination of the nature of the acts must be conducted to determine whether they truly constitute intentional torts as alleged by the plaintiffs.
|3The jurisprudence provides guidance as to this specific conduct by Dr. Cook. Specifically, this court has previously determined that sexual exploitation of a patient is an intentional tort not considered malpractice under the LMMA. L.T. v. Chandler, 40,417 (La.App.2d Cir.12/14/05), 917 So.2d 753. The Fourth Circuit has also held that allegations of sexual misconduct do not constitute medical malpractice under the LMMA, because the act does not qualify as an unintentional tort. See Fuentes v. Doctors Hosp. of Jefferson, 2001-0305 (La.App. 4th Cir. 11/21/01), 802 So.2d 865; Jure v. Raviotta, 612 So.2d 225 (La.App. 4th Cir.1992), writ denied, 614 So.2d 1257 (La.1993).
As alleged, Dr. Cook took deliberate action as a physician by becoming involved in a sexual relationship with his patient, Mrs. Heacock — he obviously acted intentionally. Therefore, we believe that plaintiffs’ claims as alleged of intentional torts committed by Dr. Cook (i.e., that he participated in a sexual relationship with his patient), are not to be considered “malpractice” as defined by the LMMA.[2] This type of deliberate action, a sexual relationship, has been deemed to be an intentional tort, and, as such, not considered a malpractice claim. We agree that the body of jurisprudence |inclassifying sexual misconduct by a physician as an intentional tort is applicable in this circumstance. Those claims against Dr. Cook that he acted intentionally in conducting a sexual relationship with Mrs. Heacock, as well as his intentional actions that flowed from that relationship, cannot be considered malpractice as defined by the LMMA. As a result, we conclude that the trial court erred in granting Dr. Cook’s exception of prematurity regarding the claims of intentional torts by Dr. Cook.
The plaintiffs have also brought claims against Palmetto in their intentional tort lawsuit, claiming that Palmetto is vicariously liable for Dr. Cook’s actions.[3] At *629 this juncture in the litigation, we are simply called to determine whether the plaintiffs’ action against Palmetto was premature-an analysis of the merits of the claims is inappropriate. Thus, we consider the issue of whether the judicial cause of action has yet to come into existence because a prerequisite condition has not been fulfilled. See White v. St. Elizabeth B.C. Bd. of Directors, supra. In order to do so, we must determine if the plaintiffs’ claim against Palmetto is an unintentional tort, i.e., malpractice. If they have stated a proper intentional tort as to Palmetto, such a claim is not malpractice and not premature.
|n Considering that the plaintiffs’ claims against Dr. Cook for intentional tortious conduct are not malpractice claims and, therefore, not premature, it follows that an allegation of Palmetto’s vicarious liability for Dr. Cook’s intentional tortious conduct likewise is not malpractice and not premature. Although Palmetto argues that the plaintiffs’ claims of intentional tortious conduct, if any, cannot be imputed to it, such an argument goes to the merits of the plaintiffs’ claims. Whether or not the plaintiffs would prevail in their claim for Palmetto’s vicarious liability for Dr. Cook’s intentional acts is not the issue-the fact that the plaintiffs have made a claim against Palmetto that is not malpractice is the issue we must consider to determine whether or not the claim was premature.
In making its argument, Palmetto argues the inapplicability of Samuels v. Southern Baptist Hosp., 594 So.2d 571 (La.App. 4th Cir.02/13/92), writ denied, 599 So.2d 316 (La.1992), in which case Southern Baptist Hospital was deemed to be vicariously liable for the intentional acts of its employee. Instead, Palmetto submits that the more recent decision in Baumeister v. Plunkett, 1995-2270 (La.05/21/96), 673 So.2d 994 should be considered. In Baumeister, the Supreme Court considered four factors to determine whether vicarious liability applied to the alleged conduct, and ultimately decided that the hospital was not vicariously | pliable for the intentional act (a rape) of its employee/nurse. However, at this phase in the litigation, we are not interested in considering the merits of the plaintiffs’ claims. Notably, what both Samuels and Bau-meister tell us is that a court will consider a claim that an employer is vicariously liable for an employee’s intentional torts. At this time, an analysis of whether the plaintiffs will prevail against Palmetto is irrelevant. What is relevant is that the plaintiffs raised a valid claim against Palmetto that did not fit within the definition of malpractice; thus those claims were improperly dismissed by the trial court for prematurity.

Negligent Torts

In addition to the intentional tort allegations by the plaintiffs, they have also asserted some claims of negligence that they maintain fall outside the definition of malpractice. Our review of the negligent tort lawsuit shows the following allegations that sound in negligence:
1) Dr. Cook’s continuous negligent advice and counseling influenced Mrs. Heacock to engage in personally harmful and destructive behavior and damaged her ability to communicate and relate to her husband;
2) Dr. Cook’s continuous negligent advice, counseling and actions caused negligent infliction of emotional pain and distress to plaintiffs; and
*630 11S3) Dr. Cook continuously negligently prescribed medications to Mrs. Heacock which medications caused her physical and emotional harm.
It is possible for a plaintiff to make negligence claims against a health care provider that fall outside of the definition of malpractice. See LaCoste, supra. However, in this case, we believe that the unintentional claims against Dr. Cook, as alleged, fall within the definition of malpractice and should be considered by a medical review panel.
The Louisiana Supreme Court has set fourth six factors which determine whether a claims sounds in medical malpractice and must first be presented to a medical review panel. Coleman v. Deno, supra at 315-16. Those factors are:
(1) whether the particular wrong is “treatment related” or caused by a dereliction of professional skill;
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) whether the pertinent act or omission involved assessment of the patient’s condition;
(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;
114(5) whether the injury would have occurred if the patient had not sought treatment; and,
(6) whether the tort alleged was intentional.
We now apply the Coleman factors to the allegations made in the plaintiffs’ petition, which we accept as true for purposes of this dispute.
(i) Whether the particular wrong is “treatment related” or caused by a dereliction of professional skill
The Heacocks allege that Dr. Cook’s negligent advice and counseling as well as his negligent prescription of medication caused Mrs. Heacock’s harm. Initially, we nóte that the allegations of negligence on their face sound treatment related. Obviously, Dr. Cook was in a position to advise, counsel and medicate Mrs. Heacock in his role as a physician. In fact, before a sexual relationship ever developed, we assume that she was under his care so he could render treatment, which would obviously include advice, counsel and medication. Those are things a physician routinely does with a patient. Specifically, considering the nature of Dr. Cook’s medical specialty and Mrs. Heacock’s illness, it is readily apparent that his treatment of this particular patient involved advice, counsel and | ^medication. His negligence in rendering such treatment would be malpractice. Thus, under this factor, the negligence claims against Dr. Cook sound in malpractice and not general negligence.

(ii) Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached

Considering that we have determined that the negligence allegations against Dr. Cook are treatment related, it stands to reason that expert medical evidence would be necessary to determine whether the standard of care was breached in rendering that treatment. The negligence actions' complained of by the plaintiffs do not involve obvious malpractice (for instance, Dr. Cook did not amputate the wrong limb). In order to prove that Dr. Cook breached the medical standard of care as to Mrs. Heacock, it would be necessary to have expert medical evidence. Without *631 expert medical evidence, a factfinder would be unable to determine if the negligent advice, counsel and medication was indeed a deviation from the standard. This is not a case in which the alleged wrongful conduct could be evaluated based on common knowledge-expert medical evidence would be necessary.

(Hi) Whether the pertinent act or omission involved assessment of the patient’s condition

11 (¡Allegations were made that Mrs. Heacock was the patient of Dr. Cook — that is the basis for the litigation. It obviously follows that if Dr. Cook, her physician, was rendering advice, counsel and medication to Mrs. Heacock, his patient, some assessment of her condition had to be made by him at some point in time. Thus, based on the fact that Mrs. Heacock was clearly the patient of Dr. Cook’s, even as the sexual relationship continued, his ongoing treatment of her, albeit allegedly negligent, necessitated some assessment of her condition.

(iv)Whether an incident occurred in the context of a physician-patient relationship

The negligent incidents alleged by the plaintiffs clearly occurred in the context of the physician-patient relationship. In fact, the basis of the plaintiffs’ lawsuits is the physician-patient relationship between Dr. Cook and Mrs, Heacock, and the theory that this sexual relationship should not have occurred due to the physician-patient relationship. If the incident did not occur in the context of a physician-patient relationship, this would be no different from the run-of-the-mill extramarital affair. The basis of the litigation and the crux of the plaintiffs’ allegations is that the incidents | ^occurred in the context of, and despite, the physician-patient relationship and it hindered Mrs. Heacock’s recovery.

(v) Whether the injury would have occurred if the patient had not sought treatment

■ From the record, it is unknown whether Dr. Cook and Mrs. Heacock knew each other before she sought treatment from him at Palmetto; however, it does not appear that they did. Had Mrs. Heacock not sought treatment from Dr. Cook for her substance abuse, common sense would dictate that her alleged injuries sustained as a result of his advice, counsel and medication would not have occurred.

(vi) Whether the tort alleged was intentional

As the plaintiffs have filed separate lawsuits claiming intentional torts and negligent torts, the claims addressed herein are distinguishable from the claims of intentional tortious acts allegedly conducted by Dr. Cook. The claims discussed herein address those unintentional acts by Dr. Cook, and so potentially would fit within the definition of malpractice.
Accordingly, considering the ' Coleman factors, the claims of negligent behavior by Dr. Cook fall within the ambit of the statutory 11sdefinition of malpractice. As such, they should be considered pursuant to the LMMA and were properly deemed to have been filed prematurely.
As to Palmetto, the plaintiffs claim that it is vicariously liable for the negligent acts of Dr. Cook. Regarding the negligence claims that we have determined are claims of malpractice and not simply general negligence, it follows that if Palmetto is vicariously liable for those actions, such claims against Palmetto would also be considered malpractice.
The plaintiffs have also alleged that Palmetto failed to train and/or supervise Dr. *632 Cook, naming several particular ways in which they believe Palmetto was negligent. Notably, however, the definition of malpractice specifically “includes all legal responsibility of a health care provider arising from ... the training or supervision of health care -providers.” These specific claims by the plaintiffs fall squarely within the definition of malpractice under the LMMA. Thus, these claims must be considered by the medical review panel prior to being brought before the trial court. As to these particular claims against Palmetto, the trial court did not err in granting its exception of prematurity.
| inFinally, we note the trial court’s reason for granting the exceptions of prematurity in the interest of judicial economy. Whereas we wholeheartedly agree that judicial economy is a worthwhile consideration, the courts should not lose sight of justice in the pursuit of economy. Here, there are other means in which the trial court might achieve greater judicial economy and deter piecemeal litigation. The trial court might consider consolidating the matters and/or staying the district court litigation pending the outcome of the medical review panel. Otherwise, we see no express prohibition of two legal actions (i.e., the medical review panel and the district court litigation) being held simultaneously. The plaintiffs should be able to proceed with their proper legal claims.
Conclusion
Considering the foregoing, the judgment of the trial court in proceeding no. 09-0208 is reversed, and the judgment of the trial court in proceeding no. 09-0204 is affirmed. Each party is to bear its own costs of appeal.
NO. 45,868-CA REVERSED; NO. 45,-869-CA AFFIRMED.

. This court consolidated the appeals by its own motion on August 16, 2010.

. Whether or not Dr. Cook indeed committed those intentional torts against the plaintiffs will be determined by the evidence yet to be considered by the trial court.

. We note that the plaintiffs have alleged that "[Palmetto] is liable under the doctrine of respondeat superior for the negligent actions of its employee, [Dr. Cook].... ” Considering that this lawsuit puts forth the claims of intentional torts by Dr. Cook (even though some of the wording of the allegations is somewhat questionable), and the parties have taken the position that the plaintiffs have claimed vicarious liability for the intentional acts as well as *629 the negligent acts, we will assume that plaintiffs are alleging vicarious liability for the intentional acts of Dr. Cook.