# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 19-414

**ALEX SHAIKH**

**VERSUS**

**SOUTHWEST LOUISIANA HOSPITAL
ASSOCIATION, ET AL**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2018-2298
HONORABLE DAVID ALEXANDER RITCHIE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## VAN H. KYZAR
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Billy Howard Ezell, D. Kent Savoie, and Van H. Kyzar, Judges.

**AFFIRMED.**

Russell J. Stutes, Jr.
P. Jody Lavergne
Jeanette Dewitt-Kyle
Deil J. Lalande
Stutes & Lavergne, LLC
P. O. Box 1644
Lake Charles, LA 70602
(337) 433-0022
COUNSEL FOR PLAINTIFF/APPELLANT:
    Alex Shaikh

Benjamin J. Guilbeau, Jr.
Megan L. Callahan
Stockwell, Sievert, Viccellio, Clements & Shaddock, LLP
P. O. Box 2900
Lake Charles, LA 70602-2900
(337) 436-9491
COUNSEL FOR DEFENDANTS/APPELLEES:
    Southwest Louisiana Hospital  Association
    Joseph Zeno

**KYZAR, Judge.**

Plaintiff appeals a judgment that granted Defendants' exception of prematurity in part, dismissing those of Plaintiff's claims sounding in negligence against Lake Charles Memorial Hospital and its employee John Zeno, without prejudice, on the grounds the claims must be reviewed by a medical review panel before the lawsuit can commence pursuant to the Louisiana Medical Malpractice Act. Based on the following, we affirm the ruling of the trial court.

## FACTS AND PROCEDURAL HISTORY

The root of this case stems from the alleged intentional sexual battery by Lake Charles Memorial Hospital (LCMH) employee John Zeno against Plaintiff Alex Shaikh while Mr. Shaikh was a patient at the hospital. On June 4, 2018, Mr. Shaikh filed a Petition for Damages, alleging that on June 6, 2017 he was admitted to LCMH and taken to shower by Defendant John Zeno, who was employed by LCMH and acting within the course and scope of his employment. Plaintiff further asserts that "[w]hile Defendant–JOHN ZENO washed Plaintiff–ALEX SHAIKH, he suddenly, and without consent, placed his mouth on Plaintiff's penis, who resisted and confronted Defendant–JOHN ZENO" interrupting the assault, but "[m]oments later, Defendant–JOHN ZENO returned to the shower and again attempted to engage in unwanted and unconsented sexual acts with Plaintiff–ALEX SHAIKH." The petition states that Zeno is liable to Mr. Shaikh for his actions in "engaging, and attempting to engage, in non-consensual sexual acts with Plaintiff" and that Defendant LCMH is "vicariously liable for all wrongful acts perpetrated by Defendant–JOHN ZENO as described herein."

The petition, however, then goes on to assert that Defendant Zeno's "acts of fault causing damage to Plaintiff" include not only the "[i]ntentional offensive, harmful, and unwanted sexual contact with Plaintiff" but also include "[f]ailing to

follow the proper standard of care", "[f]ailure to provide Plaintiff–ALEX SHAIKH a safe and secure environment after being admitted", and "[o]ther acts to be shown at the time of trial." As to LCMH, the petition alleges that in addition to respondeat superior liability[1] for the intentional acts of Defendant Zeno, it is liable to Plaintiff as a result of its failure in the proper training and supervision of its healthcare employees and failing to provide a safe environment for patients.

On June 28, 2018, Defendants LCMH and Zeno filed a joint Dilatory Exception of Prematurity asserting that Plaintiff's allegations included those which sound in medical malpractice, as contemplated by the Louisiana Medical Malpractice Act (LMMA),[2] and those allegations must first be presented to a medical review panel per the provisions of the Act. The exception claims that despite Plaintiff's petition categorizing Zeno's conduct as potentially being an intentional tort, a review of the petition reveals that the allegations sound all or in part in medical malpractice, rendering Plaintiff's Petition for Damages premature until the claims have been appropriately evaluated by a medical review panel.

A hearing on the exception of prematurity was held on October 25, 2018. At the conclusion of the hearing, the trial court granted Defendants' Dilatory Exception of Prematurity in part and denied the exception in part. In so doing, it dismissed without prejudice any and all negligence allegations asserted in Plaintiff's Petition for Damages, such that the claims must first be considered by a medical review panel. The allegations of negligence as claimed in the Petition state that Zeno (1) failed to provide the proper standard of care and (2) failed to provide a safe and secure environment, and that Lake Charles Memorial Hospital:

(1) failed to properly supervise its employee;

---

[1] *See* La.Civ.Code art. 2320.
[2] La.R.S. 40:1299.41-1299.48

2

(2) failed to properly train its employee;

(3) failed to perform proper background checks;

(4) failed to prevent the incident;

(5) failed to provide the patient with a safe and secure environment after being admitted; and

(6) other acts to be shown at the time of trial[.]

The trial court also denied Defendants' Dilatory Exception of Prematurity with regard to Plaintiff's intentional tort claims against Defendant Zeno and vicarious liability claims against LCMH, finding such claims were not subject to the LMMA.

Plaintiff appeals and asserts three assignments of error as follows:

1. The trial court erred in its application of the dilatory exception standard for determining whether claims are subject to the Louisiana Medical Malpractice Act, which states that any ambiguity must be resolved in favor of not finding the claim is subject to a medical review panel.

2. The trial court erred in concluding that Lake Charles Memorial Hospital proved, beyond all dispute, that the negligence claims asserted against it fell under the Louisiana Medical Malpractice Act.

3. The trial court erred in dismissing all negligence claims asserted by Alex Shaikh against Lake Charles Memorial Hospital and John Zeno.

## DISCUSSION

The dilatory exception of prematurity in this case questions whether Plaintiff's negligence claims against Defendants LCMH and Zeno have matured to the point where they are ripe for judicial determination. La.Code Civ.P. art. 926; *Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson*, 04-451 (La.12/1/04), 888 So.2d 782. An action is premature when it is brought before the right to enforce it has accrued. La.Code Civ.P. art. 423. Pursuant to the Louisiana Medical Malpractice Act, a medical malpractice claim against a private qualified health care provider is subject to dismissal on an exception of prematurity until such claim has first been

3

presented to a medical review panel. La.R.S. 40:1299.47(A)(1)(a); *LaCoste v. Pendleton Methodist Hosp., L.L.C.*, 07-08, 07-16 (La.9/5/07), 966 So.2d 519. Defendants, as the exceptors, carry the burden of proving prematurity and must show that they are entitled to a medical review panel. *Williamson*, 888 So.2d 782.

The Louisiana Supreme Court has repeatedly emphasized that "the LMMA and its limitations on tort liability for a qualified health care provider apply *only* to claims 'arising from medical malpractice,' and that all other tort liability on the part of the qualified health care provider is governed by general tort law." *LaCoste*, 966 So.2d at 524 (emphasis in original). The LMMA's limitations on the liability of health care providers were created by special legislation in derogation of the rights of tort victims and thus any ambiguity should be resolved in favor of the plaintiff and against finding that the alleged tort sounds in medical malpractice. *Id.* Therefore, the limitations apply strictly to cases of malpractice as defined in the act. *Id.*

The issue of whether the negligence claims of Plaintiff against Defendants sound in medical malpractice involves a question of law, so we conduct a de novo review. *Hernandez v. Diversified Healthcare-Abbeville, LLC*, 09-546 (La.App. 3 Cir. 11/4/09), 24 So.3d 284, *writ denied*, 09-2629 (La. 2/12/10), 27 So.3d 849. Louisiana Revised Statutes 40:1231.1(A)(13) (emphasis added) defines "malpractice" as:

> *[A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered,* by a health care provider, *to a patient,* including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, *in the training or supervision of health care providers,* or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

4

We note that the appeal here is limited to the allegations of negligence against LCMH and its employee Zeno and does not include the claims related to Zeno's potential liability for intentional sexual battery and the potential liability of LCMH pursuant to the doctrine of respondeat superior for Zeno's actions. As to the intentional tort claims and the potential respondeat superior liability, the trial court denied the exception of prematurity. Boiling down Plaintiff's negligence allegations to their essence, Plaintiff alleges that Zeno failed to follow the proper standard of care and failed to provide Plaintiff a safe and secure environment after his admission to the hospital. As to LCMH, Plaintiff alleges that it failed to properly supervise, failed to properly train, failed to perform proper background checks, failed to take positive action to prevent the incident, and failed to provide Plaintiff a safe and secure environment after his admission to the hospital. The resolution of the issue of whether Plaintiff's negligence claims against Defendants are "malpractice" as defined in the LMMA rests on statutory construction; are these actions, if proven as true, medical malpractice as defined in La.R.S. 40:1231.1(A)(13).

The undisputed evidence is that Zeno was employed by the hospital at the time of the incident as a hospital emergency room technician and that LCMH is a qualified health care provider pursuant to the LMMA. An employee may be covered by the LMMA, and considered qualified, if included in the insurance coverage provided to a qualified health care provider, as is the case here. *Tumminello v. Columbia Lakeside Hosp.*, 08-316 (La.App. 5 Cir. 2/25/09), 9 So.3d 258, *writ denied*, 09-679 (La. 5/15/09), 8 So.3d 587.

To determine whether certain conduct by a qualified health care provider constitutes "malpractice" as defined under the LMMA, the Louisiana Supreme Court has utilized the following factors:

5

[1] whether the particular wrong is 'treatment related' or caused by a dereliction of professional skill,

[2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, []

[3] whether the pertinent act or omission involved assessment of the patient's condition[,]

. . . .

[4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,

[5] whether the injury would have occurred if the patient had not sought treatment, and

[6] whether the tort alleged was intentional.

*Coleman v. Deno*, 01-1517, pp. 17-18 (La.1/25/02), 813 So.2d 303, 315-16 (citations omitted).

The fifth circuit in *Buford v. Williams*, 11-568, pp. 11-12 (La.App. 5 Cir. 2/14/12), 88 So.3d 540, 548, *writ denied*, 12-624 (La. 4/27/12), 86 So.3d 630 (footnotes omitted), held that the claims against the health care provider therein, River Oaks, based on the theory of respondeat superior for the rape of a patient by an employee, were not subject to the LMMA:

> As pertinent to this issue, the Medical Malpractice Act limits its definition of "malpractice" to "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient...." La. R.S. 40:1299.41(13). The Medical Malpractice Act defines "tort" as "any breach of duty or any negligent act or omission proximately causing injury or damage to another." La. R.S. 40:1299.41(A)(22).
>
> Rape is an intentional tort. An employer may have vicarious liability for intentional acts of an employee if the employee was acting

6

within the course and scope of his employment. *LeBrane* [*v. Lewis*, 292 So.2d 216 (La.1974).] Determination of course and scope is made by analyzing the acts through the factors set out in *LeBrane v. Lewis*, *supra*, and its progeny.

An employer's liability in *respondeat superior* shares the nature of the employee's act for which the employer is liable, because for vicarious liability, the employer is standing in the shoes of the employee. Therefore, because rape is an intentional act, any vicarious liability of River Oaks for rape is also classified as an intentional act. As such, River Oaks' vicarious liability is excluded from the Medical Malpractice Act.

At the hearing on the exception, the trial court in the instant case accordingly ruled that "the intentional conduct is going to be able to - - will go forward." However, it found that "[t]he negligent acts will be required to go through the medical review panel."

In *Buford*, that court also looked to the separate issue of whether the LMMA covered River Oaks' potential liability as a result of the allegations of negligent supervision and training of its employee and its failure to provide plaintiff with a safe and secure environment. John Williams, the perpetrator of the rape, was a psychiatric counselor employed by River Oaks who was supervised by nursing staff and whose role was to assist in the care of the patient. Testimony at the hearing on the exception described psychiatric counselors as "'the 24/7 staff that are out there with the patient, talking with them, getting them to groups, making sure they get their vital signs taken, making sure they make it to meals, monitoring if they are on a visual status.'" *Id.* at 545.

Reviewing this evidence, we agree with the district court that the actions of River Oaks are within the definition of malpractice in La. R.S. 40:1299.41. (We distinguish between River Oaks' direct actions and the allegations that River Oaks is vicariously liable for Williams' actions[.]) The direct allegations against the hospital are of negligence relating to the hospital's responsibility arising from acts or omissions in the training or supervision of John Williams, as well as negligence in the supervision and handling of Dolores Buford as a patient. Thus, the court correctly granted the exception of prematurity as to the

7

negligence          claims          against          River          Oaks.

*Id.* at 546 (footnotes omitted).

In *Cabrera v. Lewis*, 19-275 (La.App. 3 Cir. 11/6/19), 283 So.3d 653, a panel of this court reversed a trial court's granting of an exception of prematurity in favor of the defendant health care provider, River Oaks Hospital. There, the plaintiff's petition alleged an intentional tort by defendant, Lewis, a maintenance person who sexually assaulted the plaintiff in her room while employed by the hospital. The petition alleged that the hospital was responsible for the acts of its employee, Lewis, and further alleged the negligence of the hospital in failing to properly supervise Lewis, failing to provide a safe living condition for the plaintiff Cabrera, failing to properly screen Lewis for criminal convictions and arrests, failure to warn Ms. Cabrera of Lewis's criminal history, and failure to provide proper monitoring equipment to alert other employees that a sexual assault was taking place in the plaintiff's room. The court distinguished the facts of the case from those in *Buford*, as follows:

> We find the holding in *Buford*, as applied to this case, is distinguishable. First, in *Buford*, the alleged perpetrator of the sexual assault was a healthcare provider. In this case, Mr. Lewis was a maintenance worker whose job was not to provide healthcare. Second, in *Buford*, River Oaks Hospital, the defendant healthcare provider, introduced evidence to explain the job duties performed by the alleged perpetrator, which included providing patient care. In this case, no evidence was submitted explaining how Mr. Lewis's job duties constituted "health care or professional services rendered." Likewise, the allegations against Stonebridge do not arise from the "training or supervision of health care providers."

*Id.* at 658.

In the instant case, the employee and co-defendant Zeno is an emergency room technician. He is a health care worker charged with providing patient care, including caring for and cleaning patients such as Plaintiff, as part of the course and scope of his employment with LCMH.

8

In *Heacock v. Cook*, 45,868 (La.App. 2 Cir. 12/29/10), 60 So.3d 624, the

second circuit held that while intentional tort allegations against a physician and his

employer medical center under a vicarious liability or respondeat superior theory are

not covered by the LMMA, negligence allegations against each are.

> The plaintiffs have also alleged that Palmetto [defendant medical
> center] failed to train and/or supervise Dr. Cook, naming several
> particular ways in which they believe Palmetto was negligent. Notably,
> however, the definition of malpractice specifically "includes all legal
> responsibility of a health care provider arising from . . . the training or
> supervision of health care providers." These specific claims by the
> plaintiffs fall squarely within the definition of malpractice under the
> LMMA. Thus, these claims must be considered by the medical review
> panel prior to being brought before the trial court. As to these particular
> claims against Palmetto, the trial court did not err in granting its
> exception of prematurity.

*Id.* at 631-32.

In *W.P. v. Universal Health Services Foundation*, 11-801 (La.App. 5 Cir.

3/27/12), 91 So.3d 1097, *writ denied*, 12-960 (La. 6/15/12), 90 So.3d 1067, River

Oaks, a psychiatric medical facility, was sued by the parents of a minor who was

sexually assaulted by another patient while in the care of River Oaks. The court

found the allegations of the plaintiffs to involve health care treatment related

decisions of the provider such that the claims were governed under the LMMA.

> In the present case, plaintiffs have alleged that the hospital was
> negligent in placing H.P. in a room with another psychiatric patient.
> These allegations of the petition raise the unique situation of placing a
> minor patient in a room with another patient with special medical needs.
> As such, the allegations relate to the particular medical assessment and
> condition of each of the patients, and are therefore related to the
> treatment of the patients within the meaning of the medical malpractice
> act. Further, the assessment of patients as the basis for making room
> assignments will certainly require expert evidence bearing on the nature
> of the patients' diagnoses and will require an examination of the
> hospital staff's exercise of professional judgment in making these
> assignments. Whether the hospital exercised appropriate care in
> assigning the minor H.P. to a room with another patient being treated
> in the psychiatric hospital is beyond the common experience of a
> layman. We find that a determination of a breach of the appropriate
> standard of care for assessment of psychiatric patients and making room

9

assignments based on this assessment falls within the scope of the malpractice act.

*Id.* at 1101.

Defendants cite *Reaux v. Our Lady of Lourdes Hospital*, 492 So.2d 233 (La.App. 3 Cir.), *writ denied*, 496 So.2d 333 (La.1986), in which a patient was assaulted and raped by an outside intruder who was not associated with the hospital. A panel of this court held that a claim against the hospital following the attack fell outside the scope of the malpractice act. That court found that the torts of sexual assault, battery, and rape that were alleged were not based on health care or professional services rendered and are not therefore subject to the LMMA. However, in the instant case, the claims dismissed by the trial court as premature are not claims of rape and battery, but claims sounding in negligence. The plaintiffs in *Reaux* alleged that the rape resulted from a lack of monitoring and security by the hospital, and the court found there were no allegations which could be found to be treatment related. As distinguished from the instant case, the perpetrator of the rape was not a healthcare provider. He was not an employee of the hospital or associated with the hospital in any way. Thus, there were no allegations of negligent training or supervision of the intentional tortfeasor.

In the instant case, Plaintiff alleges failure to properly supervise, failure to properly train, failure to perform proper background checks, failure to provide the proper standard of care, and failure to provide Plaintiff with a safe and secure environment. Plaintiff was brought to the hospital for the purpose of receiving medical attention. It is undisputed that Zeno was an emergency room tech and employed by the hospital. At the time of injury, he was following the instructions of the nursing staff and providing care and treatment to a mental health patient up until the time of the alleged sexual assault against Plaintiff.

10

The current definition of malpractice appearing at La.R.S. 40:1231.1(A)(13), specifically includes "all legal responsibility of a health care provider arising from acts or omissions . . . in the training or supervision of health care providers." "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La.Civ.Code art. 9. As noted by the court in *Dinnat v. Texada*, 09-665, p. 5 (La.App. 3 Cir. 2/10/10), 30 So.3d 1139, 1142, *writ denied*, 10-540 (La.6/18/10), 38 So.3d 322, "Because Plaintiffs' claim is one of negligent supervision, and because negligent supervision is specifically defined as an act of malpractice under the MMA, as of the 2001 amendment, the MMA applies."

Based upon our review of the facts and the law applicable hereto, we find that the claims of Plaintiff alleging Defendant LCMH's potential liability in its failure to properly supervise, failure to properly train, failure to perform proper background checks, failure to take positive action to prevent the incident, and failure to provide Plaintiff a safe and secure environment after his admission to the hospital do fall under the umbrella of the LMMA. Thus, the trial court decision granting the exception of prematurity requiring the negligence claims to be submitted to a medical review panel is affirmed. Further, the trial court decision granting the exception of prematurity requiring the negligence claims against Defendant Zeno that he failed to follow the proper standard of care, and failed to provide Plaintiff a safe and secure environment after his admission to the hospital to be submitted to a medical review panel is affirmed. All other claims regarding the intentional acts of Zeno and any vicarious liability of LCMH as it relates to said acts are not subjects of this appeal and the trial court's ruling on such is undisturbed by this court.

11

## DISPOSITION

The trial court found in favor of Defendants Lake Charles Memorial Hospital and John Zeno, granting-in-part Defendants' Dilatory Exception of Prematurity and dismissing without prejudice any and all negligence allegations asserted in Plaintiff's Petition for Damages. This ruling is affirmed. Costs of this appeal are assessed to Plaintiff Alex Shaikh.

**AFFIRMED.**