Judgment rendered April 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,516-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ANNA T. REYNOLDS,                                     Plaintiffs-Appellants
Individually as HEIR and as
SUCCESSION
REPRESENTATIVE for the
SUCCESSION OF HELEN
ROBINSON MCGAHA, and
KRISTE T. UTLEY, STEPHEN E.
TALTON, AND JULIE T.
MCCRORY, Individually as
HEIRS OF HELEN ROBINSON
MCGAHA

versus

THE OAKS NURSING &                                   Defendants-Appellees
REHABILITATION, PHM
CORPORATION, WOODLAWN
MANOR, INC., JANE DOES,
JOHN DOES, AND ASCEND
HOSPICE CARE, LLC

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2021-2275

Honorable Alvin R. Sharp, Judge

* * * * *

BOYKIN & UTLEY, PLC                          Counsel for Appellants,
By: Kriste Talton Utley                      Anna T. Reynolds, et al
    Alexis R. Jani

FAIRCLOTH MELTON          Counsel for Appellee,
SOBEL & BASH, LLC          Woodlawn Manor, Inc.
By: David R. Sobel          dba The Oaks Nursing &
    Jordan S. Varnado          Rehabilitation, Inc.

BRADLEY MURCHISON          Counsel for Appellee,
KELLY & SHEA LLC          Ascend Hospice Care,
By: Lorraine P. McInnis          LLC

* * * * *

Before COX, THOMPSON, and ELLENDER, JJ.

**ELLENDER, J.**

Plaintiffs, the grandchildren of Helen McGaha, appeal two judgments which, in effect, sustained exceptions of prematurity filed by a nursing home and a hospice provider and dismissed all claims without prejudice, pursuant to the La. Medical Malpractice Act ("LMMA"). The nursing home has filed, in response to the appeal, an exception of no cause or right of action. For the reasons expressed, we affirm the judgments sustaining the exceptions of prematurity and deny the exception of no cause or right of action.

## FACTUAL BACKGROUND

Mrs. McGaha was a resident of The Oaks Nursing and Rehabilitation, a nursing facility in Monroe, La., from 2018 until her death on August 1, 2020. According to the petition, some 48 hours before her death she started complaining of unbearable abdominal pain. The next evening, her hospice provider, Ascend Hospice Care, came to The Oaks, checked her, said she needed to go to the emergency room, but did not stay to make sure this happened; instead, The Oaks personnel kept her in the facility, allegedly knowing this would cause her to suffer. Overnight, she phoned the plaintiffs screaming, "Help me!," but owing to COVID-19 protocols then in place, they could not enter the building; the next morning, The Oaks personnel finally sent her to St. Francis Medical Center, but she died later that day, of ischemic (dead) colon.

The plaintiffs filed a request for medical review panel ("MRP") on July 30, 2021, against The Oaks and two related corporations, Woodlawn Manor and PHM Corp., and Ascend Hospice Care. They alleged deviations from the standards of care; failure to treat and assess, monitor, and medicate

the patient; allowing her to suffer in excruciating pain; and, chiefly, failing to timely transfer her to the hospital or emergency room.

Three days later, August 2, 2021, the plaintiffs filed this petition for damages in the Fourth JDC. They named as defendants The Oaks and the two related corporations, Ascend Hospice Care, and various John and Jane Does. They raised factual allegations identical to those listed in the MRP request, but added that the defendants were liable "under theories of gross negligence, intentional tort, and willful disregard," and "wanton and reckless disregard." They sought damages for physical and emotional pain and suffering, physical disfigurement and impairment, survival action, and wrongful death.

## PROCEDURAL HISTORY

The Oaks filed a dilatory exception of prematurity asserting the protection of LMMA and the pendency of the MRP.[1] The plaintiffs responded that not all their claims were covered by LMMA, as some of the conduct was intentional or not healthcare. After a hearing on June 3, 2022, the district court sustained the exception and rendered judgment dismissing all claims against The Oaks, without prejudice, and with no grant of leave to amend.

Meanwhile, Ascend filed an answer and exception of prematurity, but this was too late to be included in the June 3 hearing; it remained pending.

On August 16, the plaintiffs filed a supplemental and amending petition, naming all the same defendants. They reiterated their factual

---

[1] One of the related corporations, PHM Corp., admitted it was not a qualified healthcare provider and not entitled to the protection of LMMA. The pleadings and judgments affecting PHM Corp. are not subject to this appeal.

2

claims, but added that The Oaks and Ascend knew that Mrs. McGaha "was substantially certain to suffer in agony and excruciating pain and/or that it was substantially certain that her death would be hastened[,]" their conduct was extreme and outrageous, the resulting emotional distress was severe, and they knew it was substantially certain to result from their conduct. Notably, the plaintiffs did not request, and the district court did not grant, leave of court for this filing.

On August 24, the plaintiffs moved for new trial of The Oaks' exception of prematurity. They argued that their amended petition "more clearly articulated" their claims of intentional tort against The Oaks, so a discretionary new trial was warranted. The Oaks opposed this, arguing the first judgment did not give the plaintiffs leave to amend.

On October 10, Ascend filed another exception of prematurity, this one addressing the supplemental and amending petition, again asserting the protection of LMMA.

The plaintiffs filed a "global opposition" to The Oaks' and Ascend's motions. Hearing on all three matters was set for January 30, 2023.

## ACTION OF THE DISTRICT COURT

After the hearing, the court rendered two judgments. The first sustained Ascend's exception of prematurity, dismissed all plaintiffs' claims without prejudice, and certified this judgment as appealable. The second denied the plaintiffs' motion for new trial against The Oaks, again sustained The Oaks' exception of prematurity, and certified this judgment as appealable.

3

The plaintiffs appealed, raising four assignments of error. The Oaks filed, in this court, an exception of no cause or right of action, seeking to dismiss certain claims on grounds they were not raised in the district court.

**APPLICABLE LAW**

No action against a qualified healthcare provider may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel. La. R.S. 40:1231.8 (B)(1)(a)(i). A medical malpractice claim against a qualified healthcare provider is subject to dismissal on a timely exception of prematurity if such claim has not first been reviewed by a pre-suit MRP. *Dupuy v. NMC Oper. Co.*, 15-1754 (La. 3/15/16), 187 So. 3d 436. The burden of proving prematurity is on the moving party, which, in a medical malpractice case, must show that it is entitled to the MRP because the allegations fall within the scope of LMMA. *Kelleher v. University Med. Ctr. Mgmt. Corp.*, 21-00011 (La. 10/10/21), 332 So. 3d 654. Where no evidence is presented at the trial of a dilatory exception, the court must render its decision on the exception based on the facts as alleged in the petition, and all allegations therein must be accepted as true. *LaCoste v. Pendleton Methodist Hosp.*, 07-0008 (La. 9/5/07), 966 So. 2d 519. Because whether a claim sounds in medical malpractice is a question of law, appellate review of the ruling on the exception of prematurity is de novo. *Wendling v. Riverview Care Ctr.*, 54,958 (La. App. 2 Cir. 4/5/23), 361 So. 3d 557.

Malpractice is defined as "any unintentional tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely[.]" La. R.S. 40:1231.1 (A)(13). Health care is

4

defined as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement[.]" La. R.S. 40:1231.1 (A)(9). Because LMMA stands in derogation of patients' general tort rights, its coverage is strictly construed and is applied only in cases of malpractice as defined therein. *Sewell v. Doctors Hosp.*, 600 So. 2d 577 (La. 1992); *Wendling v. Riverview Care Ctr.*, *supra*.

To determine whether given conduct is medical treatment, and thus subject to LMMA, courts typically use six factors: (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill; (2) whether the wrong requires expert medical evidence to determine if the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition; (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; and (6) whether the tort alleged was intentional. *Coleman v. Deno*, 01-1517 (La. 1/25/02), 813 So. 2d 303; *Wendling v. Riverview Care Ctr.*, *supra*.

By definition, intentional acts are outside the ambit of LMMA. R.S. 40:1231.1 (A)(13); *Thomas v. Reg'l Health Sys. of Acadiana LLC*, 19-00507 (La. 1/29/20), 347 So. 3d 595; *McDowell v. Garden Court Healthcare LLC*, 54,645 (La. App. 2 Cir. 8/10/22), 345 So. 3d 506, *writ denied*, 22-01364 (La. 11/16/22), 349 So. 3d 999. The dilatory exception of prematurity neither challenges nor attempts to defeat the claimant's cause of action, but, rather,

5

tests whether the claimant failed to take some preliminary step necessary to make the controversy ripe for judicial involvement. *LaCoste v. Pendleton Methodist Hosp.*, *supra*; *McDowell v. Garden Court*, *supra*. On the exception of prematurity, the substance of the allegations guides the decision, not whether the claimant labels them "intentional torts," "gross negligence," or "willful misconduct." *McDowell v. Garden Court*, *supra*; *Heacock v. Cook*, 45,868 (La. App. 2 Cir. 12/29/10), 60 So. 3d 624; *Hebert v. La. Med. Mut. Ins. Co.*, 22-316 (La. App. 3 Cir. 10/26/22), 353 So. 3d 846.

As pertains to nursing homes, not all negligent acts occurring in these facilities constitute medical malpractice under LMMA. *Richard v. La. Extended Care Ctrs.*, 02-0978 (La. 1/14/03), 835 So. 2d 460. To constitute medical malpractice, the alleged conduct must be related to the patient's medical treatment. *Id.*

Further, the Nursing Home Residents' Bill of Rights ("NHRBR") guarantees residents the right to be treated "courteously, fairly, and with the fullest measure of dignity[.]" La. R.S. 40:2010.8 (A)(9). However, since a 2003 amendment, NHRBR provides a remedy limited to injunctive relief, with related attorney fees and costs; actual damages are not authorized. *Wendling v. Riverview Care Ctr.*, *supra*. This court has permitted dignity-type claims under NHRBR to proceed outside the procedure of LMMA, when such claims are based on negligent diapering, which is not deemed to be healthcare. *Id.*; *Henry v. West Monroe Guest House Inc.*, 39,442 (La. App. 2 Cir. 3/2/05), 895 So. 2d 680; *Patterson v. Claiborne Oper. Group LLC*, 55,264 (La. App. 2 Cir. 11/15/23), 374 So. 3d 299; *Swain v. Lambard*, 55,377 (La. App. 2 Cir. 1/10/24), __ So. 3d __.

6

By their first assignment of error, the plaintiffs urge the district court erred in dismissing all claims against The Oaks and Ascend because they did not meet their burden of proof that all claims against them are subject to LMMA. They show that the burden of proving the protection of LMMA is on the defendant, *Broussard v. Lafayette Phys. Rehab. Hosp. LLC*, 15-1185 (La. App. 3 Cir. 5/4/16), 191 So. 3d 1202, and any ambiguity must be construed in favor of the plaintiff, *LaCoste v. Pendleton Methodist*, *supra*. Further, for purposes of LMMA coverage, all allegations in the petition must be taken as true, *May v. Diversified Healthcare-Abbeville LLC*, 21-744 (La. App. 3 Cir. 5/11/22), 339 So. 3d 675. The plaintiffs submit the claims in their original and amended petitions alleged intentional tort and intentional infliction of emotional distress, and this is sufficient to take them out of the ambit of LMMA; the defendant cannot attack the merits of the claims.

By their second assignment of error, the plaintiffs urge the court erred in dismissing all claims against The Oaks and Ascend because LMMA does not apply to claims arising out of intentional tort. Intentional acts are excluded from LMMA, R.S. 40:1231.1 (A)(13). The elements of an intentional tort are the defendant (1) consciously desired the result of his act, whatever the likelihood of that result happening from his conduct, and (2) knew that the result was substantially certain to follow from his conduct, whatever his desire may be as to that result, *Capione v. Alderman*, 07-1254 (La. App. 3 Cir. 3/5/08), 978 So. 2d 1111. The plaintiffs contend they met this standard by alleging The Oaks *intentionally* refused to call an ambulance and Ascend *intentionally* refused to lend aid or help when Mrs. McGaha was in obvious distress. They also submit this conduct meets the

standard for intentional infliction of emotional distress, *White v. Monsanto Corp.*, 585 So. 2d 1205 (La. 1991).

By their fourth assignment, the plaintiffs urge the court erred in considering the merits of the defendants' arguments concerning intentional tort. On the exception of prematurity, they show, the court cannot consider the merits of the claimants' allegations of intentional tort, *Heacock v. Cook*, *supra*. They conclude that the plaintiffs "need not prove the merits of their claims to defeat an exception of prematurity, just that said properly plead [*sic*] claims exist."

Collectively, these assignments contend the plaintiffs' claims fall outside the coverage of LMMA because they assert intentional acts, which are excluded by R.S. 40:1281.1 (A)(13). On de novo review, we find that while the alleged acts involve some element of volition or intent, they are still malpractice as defined by LMMA. The original petition, like the MRP request, alleged deviations from the standards of care; failure to treat and assess, monitor, and medicate Mrs. McGaha; allowing her suffer in excruciating pain; and failing to timely transfer her to the hospital or emergency room. The amended petition restated the same factual claims, adding the rubric of intentional tort and intentional infliction of emotional distress. The crux of the claim is "failure to render services timely," an act precisely defined as healthcare in R.S. 40:1231.1 (A)(13). The added assertion that the acts were intentional does not change the essential nature of the contested conduct, which was failure to provide necessary healthcare. *McDowell v. Garden Court*, *supra*; *Heacock v. Cook*, *supra*; *Hebert v. La. Med. Mut. Ins. Co.*, *supra*.

8

The court's duty is not to determine whether, in fact, an intentional act occurred, but merely whether the action is premature. *McDowell v. Garden Court*, *supra*. Using the substance of the allegations, not the labels, we find this action is indeed premature.

For comparison, we have closely examined the cases where the alleged conduct was found to be not premature. In *Heacock v. Cook*, *supra*, the plaintiff was admitted to an addiction recovery facility, followed by outpatient treatment; she later filed a tort suit alleging that her treating physician committed the intentional tort of entering into an inappropriate sexual relationship with her. The defendants asserted the exception of prematurity; the district court, finding the allegations "sounded in malpractice," sustained the exception. This court reversed, finding the infliction of sexual battery and assault on a patient does not constitute healthcare. In *May v. Diversified Healthcare-Abbeville*, *supra*, an 80-year-old stroke patient was allowed to smoke in bed, under the nursing home's "safe smoker" policy; unfortunately, she caught her bed on fire and was seriously burned. In response to her suit, the nursing home asserted the exception of prematurity, which the district court sustained; on appeal, the Third Circuit reversed. Although the issue was not intentional tort, the court reasoned that making a "safe smoker" assessment, and allowing stroke patients to smoke, was not part of healthcare. These cases illustrate the kind of conduct that falls outside the ambit of LMMA.

Other cases illustrate that acts which are arguably intentional yet fall under LMMA. In *Evans v. Heritage Manor Stratmore Nursing & Rehab.*, 51,651 (La. App. 2 Cir. 9/27/17), 244 So. 3d 737, *writ denied*, 17-1826 (La. 12/15/17), 231 So. 3d 639, the plaintiff was a stroke patient in a nursing

home and under doctor's orders to keep his diapers clean, to prevent recurring ulcers. On one occasion, he put up resistance when a certified nursing assistant tried to change his diaper. Instead of calling her LPN for assistance, the CNA grappled with the plaintiff, ultimately punching him in the face and scratching him with her acrylic nails. Although the issue on appeal was prescription, this court found that, pursuant to doctor's orders, changing the diaper was healthcare, and the blow to the face, though intentional, was covered by LMMA. In *White v. Glen Retirement Sys.*, 50,508 (La. App. 2 Cir. 4/27/16), 195 So. 3d 485, the plaintiff was a 95-year-old nursing home resident; an attendant placed her bed in the highest position; she fell out of the bed, breaking both legs and leading to the amputation of one. She filed a tort suit, to which the nursing home raised the exception of prematurity, which the district court sustained. This court affirmed, finding the placement of the bed (and the handling of the patient after the fall) were questions of healthcare and had to go before the MRP. Punching a patient in the face, and setting a patient's bed too high, are arguably intentional acts, but they fell under LMMA. The allegations surrounding Mrs. McGaha's treatment are not as intentional as these.

Contrary to the plaintiffs' argument, the analysis does not consider or resolve the merits of the claims. Rather, it scrutinizes the allegations for their factual content and determines whether they involve healthcare, fall under LMMA, and must proceed to an MRP. On de novo review, we find they do, and affirm the judgments on the exceptions of prematurity. These assignments of error lack merit.

By their third assignment of error, the plaintiffs urge the court erred in granting the exceptions of prematurity because the plaintiffs' dignity-type

claims fall outside LMMA. They argue the situation is strikingly similar to the negligent diapering in *Wendling v. Riverview Care Ctr.*, *supra*, and *Henry v. W. Monroe Guest House*, *supra*. They contend these cases recognized that claims for loss of dignity fall under NHRBR, R.S. 40:2010.8 (A)(9), and are excluded from the limitations of LMMA. They conclude that The Oaks' and Ascend's conduct deprived Mrs. McGaha of her dignity.

This court recently summarized the law of dignity-type claims, in *Patterson v. Claiborne Oper. Group*, *supra*:

> Regarding claims of negligent diapering and damages derived therefrom, as this Court recognized in *Wendling v. Riverview Care Center * * ***, relying on *Randall v. Concordia Nursing Home*, 07-101 (La. App. 3 Cir. 8/22/07), 965 So. 2d 559, *writ denied*, 07-2153 (La. 1/7/08), 973 So. 2d 726, and *Davis v. St. Francisville Country Manor, LLC*, 05-0072 (La. Ap. 1 Cir. 2/10/06), 928 So. 2d 549, *writs denied*, 06-0604 (La. 5/26/06), 930 So. 2d 25, 07-0481 (La. 4/27/07), 955 So. 2d 699, there can be a claim for dignity-type or tort damages arising from negligent diapering under La. C.C. art. 2315 that may be sought without first being submitted to the medical review panel, notwithstanding the fact that they may share a factual basis with some of the treatment-related claims. * * *

The dignity-type claims allowed in these cases are all premised on negligent diapering, a procedure which, in most instances, is deemed to be not healthcare. Obviously, Mrs. McGaha's case does not involve diapering. Moreover, if the procedure in a given case is deemed to be healthcare, it falls under LMMA and must go before the MRP before a tort suit can proceed. Such is the case here; for the reasons already discussed, the alleged failure to diagnose and provide healthcare to McGaha fall under the definition of healthcare. This assignment lacks merit.

The Oaks filed an exception of no cause or right of action with respect to the dignity-type damages, asserting the court should not consider any argument raised for the first time in brief. The appellate court shall review

11

issues that were submitted to the trial court and that are contained in specifications or assignments of error, unless the interest of justice requires otherwise. URCA 1-3; *Thomas v. Bridges*, 13-1855 (La. 5/7/14), 144 So. 3d 1001; *Pentecost v. Grassi*, 54,836 (La. App. 2 Cir. 3/1/23), 357 So. 3d 588, *writ denied*, 23-00476 (La. 5/23/23), 360 So. 3d 1258. However, declining an argument for URCA 1-3 noncompliance is discretionary with the court. *Pentecost v. Grassi*, *supra*; *Volentine v. Raeford Farms of La. LLC*, 50,698 (La. App. 2 Cir. 8/15/16), 201 So. 3d 325, *writs denied*, 16-1924, -1925 (La. 12/16/16), 212 So. 3d 1171. This court had to consider the issue of dignity-type damages with respect to Ascend, and found the action was premature. As the analysis is the same with respect to The Oaks, we sustain the exception of prematurity and deny the peremptory exception of no cause or right of action.

## CONCLUSION

For the reasons expressed, the judgments are affirmed. The exception of no right or cause of action is denied. All costs are to be paid by the plaintiffs.

**AFFIRMED**.

12