Judgment rendered August 10, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,645-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SARA MCDOWELL,                                  Plaintiff-Appellant
INDIVIDUALLY AND ON
BEHALF OF THE ESTATE OF
HER HUSBAND, HARTLEY
DUNCAN, DECEASED

versus

GARDEN COURT                                    Defendants-Appellees
HEALTHCARE, L.L.C., D/B/A
GARDEN COURT HEALTH AND
REHABILITATION, JUNE
RODERICK, NP AND PROVIDER
HEALTH SERVICES, L.L.C.

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 164804

Honorable John Marion Robinson, Judge (*Pro Tempore*)

* * * * *

KOSMITIS BOND APLC                              Counsel for Appellant
By: Georgia P. Kosmitis
    Avery E. Bond

WISE CARTER CHILD & CARAWAY                     Counsel for Appellee,
By: Gaye L. Currie                              Garden Court
                                                Healthcare, L.L.C. d/b/a
                                                Garden Court Health
                                                and Rehabilitation

BRADLEY MURCHISON KELLY
& SHEA LLC
By: Crystal E. Domreis
      Micholle W. Mordock

Counsel for Appellees,
June Roderick, NP and
Provider Health Services,
L.L.C.

* * * * *

Before STONE, HUNTER, and MARCOTTE, JJ.

**HUNTER, J.**

The trial court granted the dilatory exception of prematurity filed by defendants, Provider Health Services, L.L.C. and June Roderick, nurse practitioner, and dismissed plaintiff's claims without prejudice. Plaintiff, Sara McDowell, individually and on behalf of the estate of her husband, Hartley Duncan, deceased, appeals the judgment. For the following reasons, we affirm.

## FACTS

In 2020, the decedent, Hartley Duncan, suffered a cerebral vascular accident (stroke). On May 12, 2020, he was admitted to Garden Court Health and Rehabilitation in Bossier City, Louisiana, with diagnoses of left-sided hemiplegia, aphasia, and dysphagia. On July 13, 2020, the decedent was transferred to Willis Knighton Bossier to undergo treatment for dehydration, renal failure, a urinary tract infection caused by Klebsiella pneumoniae bacteria, and septic shock. He was later placed in hospice care and died on August 29, 2020.

On May 7, 2021, decedent's wife, Sara McDowell, individually and on behalf of the decedent's estate, filed a lawsuit for "damages of wrongful death, survival and breach of contract all caused by the willful misconduct of the defendants[.]" Plaintiff named as defendants Garden Court Healthcare, L.L.C., d/b/a Garden Court Health and Rehabilitation ("Garden Court"),[1] June Roderick (a nurse practitioner), and Roderick's employer, Provider

---

[1] Plaintiff made various allegations against Garden Court, which answered the petition with general denials and asserted various defenses. The allegations against Garden Court are not at issue in this appeal and will not be addressed in this opinion.

Health Services, L.L.C. ("PHS"). Plaintiff also filed a request for a medical review panel ("MRP").

In the petition for damages, plaintiff alleged she and the decedent suffered damages caused by the willful misconduct of the named defendants, whose conduct "rose to the level of grossly negligent conduct with a willful disregard of the care" of the decedent. The specific allegations against Roderick and PHS include the following:

- PHS and Roderick contracted with Garden Court to provide services to its residents and began treating the decedent while he was a patient in the Garden Court facility;

- PHS and Roderick failed to provide care according to the needs of the decedent and were grossly negligent in ensuring the decedent received food, fluids, and medical care;

- Plaintiff believed Dr. Hudson would be supervising and caring for the decedent, and PHS and Roderick began providing treatment to the decedent without lawful consent;

- PHS and Roderick failed to obtain timely medical care for the decedent despite knowing he was in septic shock and suffering from an infection and dehydration, which significantly contributed to his demise;

- During his admission, the decedent was administered Lasix, a diuretic, and a laxative, and it was foreseeable that without proper supervision, assistance, nutrition, and hydration monitoring and provision, he would suffer severe dehydration and malnutrition;

- The decedent suffered severe infection, sepsis, renal failure as a result of lack of fluid intake, pressure injury, muscle wasting, and continued pain and suffering as a result of the failure to provide basic care, including keeping the decedent fed, hydrated, and providing infection control and medical care;

- The decedent was not provided adequate nutrition nor hydration and was continually receiving Lasix and laxatives. As a result, the decedent suffered severe

2

dehydration to the point of renal failure, a urinary tract infection, and septic shock. He was transferred to Willis Knighton Bossier on July 13, 2020 for treatment of these severe conditions and required continued care at Cornerstone for antibiotic treatment for the sepsis, wound care, hypernatremia, and acute kidney injury;

- The decedent succumbed from his injuries as the direct result of the nursing home agents and employees' utter disregard for his safety and care;

- As a result of the grossly negligent care provided by the named defendants, the decedent suffered acute renal failure from lack of fluids, causing him to be placed on dialysis, Klebsiella septic shock as a result of failure to provide infection control and medical care, atrial fibrillation and metabolic encephalopathy as a result of the utter disregard by defendants' agents and employees. As a direct result of the utter disregard shown by the nursing home staff, agents, employees, including nurse practitioners contracted by them, the decedent died on August 29, 2020, suffering pain, suffering, emotional anguish, for which he and his wife are entitled to damages under the law;

- PHS and Roderick knew or should have known the pattern of understaffing and inadequate staffing, lack of medical care, and failing to transfer the decedent for a higher level of care would, and did, cause harm to the decedent;

- While under the care of Garden Court, Roderick, and PHS, the decedent was subjected to abuse and neglect under the laws of our state, which include knowingly:

> Failing to provide care as needed to keep the patient nourished, hydrated, safe from injuries and infections;

> Failing to provide adequate staff and equipment to provide skilled care along with nutrition, hydration, hygiene, bathing, assistance and supervision in accord with a comprehensive care plan;

> Failing to provide needed assessments and care planning as required to keep the patient safe, free from injury, infection;

3

> Failing to provide adequate allocation of funds to ensure proper supervision, monitoring and equipment and to meet the needs of the decedent;
>
> Failing to provide reasonable care along with best judgment exercising the skill and judgment required to meet the standards of care required of nursing homes;
>
> Failing to ensure the care and treatment of the decedent was supervised at all times by his physician and ensuring physician involvement in the care of the decedent as required; and
>
> Failing to transfer the decedent to a higher level of care as his condition required.

On June 25, 2021, PHS and Roderick filed a dilatory exception of prematurity asserting the allegations against them sound in medical malpractice, which must first be reviewed by the MRP. Plaintiff responded, contending defendants' conduct "rose to the level of gross negligence and willful disregard," which are outside the scope of the definition of medical malpractice. During her argument at the hearing on the exception, plaintiff's counsel asserted defendants' actions were intentional and cannot be reviewed by the MRP. The trial court sustained the exception, stating in part:

> \*\*\*
>
> [R]egardless of putting the gross negligence language in there, the argument that it's in fact intentional \*\*\* I just think if you take it overall, the whole – the whole thing \*\*\* it still sounds of malpractice. And I will grant the exception and dismissal without prejudice[.]
> \*\*\*

Plaintiff appeals.

**DISCUSSION**

Plaintiff contends the trial court erred in granting the dilatory exception of prematurity. Plaintiff argues her claims of gross negligence and willful misconduct do not fall within the purview of the MMA. According to plaintiff, PHS and Roderick were grossly negligent in causing decedent to be transferred to a facility, which they knew was understaffed, and in failing to notify decedent's family of his condition, knowing family members were not allowed to visit decedent due to Covid-19 restrictions. She also maintains many of the allegations contained in her petition, such as the failure to provide adequate hydration and nutrition, are custodial in nature and do not constitute healthcare, medical care, and are not treatment related.

La. C.C.P. art. 926 provides for the dilatory exception raising the objection of prematurity. The exception of prematurity addresses the issue of whether a judicial cause of action has yet come into existence because a prerequisite condition has not been fulfilled. *LaCoste v. Pendleton Methodist Hosp., L.L.C.*, 07-0008 (La. 9/5/07), 966 So. 2d 519; *White v. Glen Ret. Sys.*, 50,508 (La. App. 2 Cir. 4/27/16), 195 So. 3d 485. The dilatory exception of prematurity is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim to the MRP before filing suit against the provider. *White*, *supra*; *Henry v. West Monroe Guest House, Inc.*, 39,442 (La. App. 2 Cir. 3/2/05), 895 So. 2d 680. The exception of prematurity neither challenges nor attempts to defeat the elements of the plaintiff's cause of action; instead the defendant asserts the plaintiff has failed to take some

5

preliminary step necessary to make the controversy ripe for judicial involvement. *LaCoste*, *supra*; *White*, *supra*.

No action against a health care provider under the MMA, or against his insurer, "may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel" in accordance with the MMA. La. R.S. 40:1231.8(B)(1)(a)(i). Any tort suit filed before completion of the MRP process is subject to dismissal on an exception of prematurity. *Blevins v. Hamilton Med. Ctr. Inc.*, 06-127 (La. 6/29/07), 959 So. 2d 440; *Butler-Bowie v. Olive Branch Senior Care Ctr.*, 52,520 (La. App. 2 Cir. 2/27/19), 266 So. 3d 478.

Not every unintentional tort committed by a qualified heath care provider falls within the MMA, only those "arising from medical malpractice." *Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson*, 04-0451 (La. 12/1/04), 888 So. 2d 782. The Louisiana Supreme Court has, without exception, emphasized the MMA and its limitations on tort liability for a qualified health care provider apply strictly to claims "arising from medical malpractice," and all other tort liability on the part of the qualified health care provider is governed by general tort law. *Williamson*, *supra*; *Coleman v. Deno*, 01-1517 (La. 1/25/02), 813 So. 2d 303; *Spradlin v. Acadia-St. Landry Med. Foundation*, 98-1977 (La. 9/29/00), 758 So. 2d 116; *Hutchinson v. Patel*, 93-2156 (La. 5/23/94), 637 So. 3d 415; *Sewell v. Doctors Hosp.*, 600 So. 2d 577 (La. 1992).

The MMA defines "malpractice" as follows:

> [A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also

includes all legal responsibility of a health care provider arising from acts or omissions during *** in the training or supervision of health care providers[.]

La. R.S. 40:1231.1(A)(13). The MMA further defines "health care" and "tort" as follows:

"Health care" means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement[.]

"Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.

La. R.S. 40:1231.1(A)(9) and (22).

Furthermore, on March 11, 2020, Governor John Bel Edwards declared a public health emergency for the State of Louisiana due to the Covid-19 global pandemic. Within the declaration, the governor invoked the Louisiana Health Emergency Powers Act, set forth in La. R.S. 29:760, *et seq*. La. R.S. 29:771(B)(2)(c)(i) provides:

During a state of public health emergency, no health care provider shall be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or willful misconduct.

The statutory law leaves no doubt "malpractice" under the MMA does not include intentional acts; malpractice is specifically defined as "any unintentional tort." In turn, "tort" is defined as "any breach of duty or any negligent act." Although the MMA does not specifically encompass "gross negligence," it does not exclude the term from its scope.

7

In the instant case, in her petition for damages, plaintiff asserted claims of gross negligence and willful misconduct, which, according to her, are not covered under the MMA. Further, during the argument before the trial court, plaintiff's counsel argued defendants' actions were intentional. She stated:

> [I]n this case, the gross negligence cannot be reviewed by a medical review panel because they are intentional. We have to prove willful misconduct. And that's our requirement to prove is willful misconduct. Any act of malpractice to be covered by the medical malpractice act is not intentional, cannot be intentional. Malpractice is defined in the malpractice act as an unintentional harm. And so clearly the statutory directive says that if it's intentional it falls outside of medical malpractice.

It is undisputed Roderick and PHS are health providers under the Louisiana Medical Malpractice Act ("MMA").[2] It is also undisputed Roderick was not an employee of the nursing home/rehabilitation facility. Rather, according to plaintiff's petition, she was a nurse practitioner, whose employer contracted with the nursing facility to provide medical treatment to residents of the facility.

In *Coleman*, *supra*, the Louisiana Supreme Court set forth a six-factor test for determining whether particular conduct by a health care provider constitutes "malpractice" under the MMA. The Supreme Court utilized the following factors:

> (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;
> (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
> (3) whether the pertinent act or omission involved assessment of the patient's condition;

---

[2] "Heath care provider" includes any person or limited liability company "licensed or certified by this state to provide health care or professional services," including a nurse practitioner. La. R.S. 40:1231.1(A)(10).

8

(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;

(5) whether the injury would have occurred if the patient had not sought treatment; and

(6) whether the tort alleged was intentional.

*See also*, *Sewell*, *supra*.

Considering the nature of the allegations set forth in plaintiff's petition, and the factors set forth in *Coleman*, *supra*, we find the acts allegedly committed by Roderick, *i.e.*, she failed to adequately assess, consider, and treat the decedent's nutritional and hydration status, arose from medical treatment with regard to the decedent's medical condition(s) and the assessment thereof. Consequently, we find the acts were "treatment related" or caused by a dereliction of professional skill.

Additionally, under the second *Coleman* factor, whether expert testimony would be required, such testimony would be necessary to establish the applicable standard of care for nurse practitioners, whether Roderick breached that standard of care and whether Roderick's actions led to a deterioration in the decedent's medical condition, which, in turn, resulted in his death. Furthermore, based on plaintiff's petition, the acts/omissions allegedly committed by Roderick involved assessment of the decedent's condition. According to the petition and the arguments presented to the trial court, Roderick made rounds at the nursing facility once or twice a week to assess the decedent's condition, order and/or review laboratory tests, evaluate the results, and order or adjust medications to treat the decedent's medical condition(s).

Likewise, the alleged acts occurred in the context of a nurse practitioner-patient relationship, or was within the scope of activities which

Roderick and the facility were licensed to perform. Garden Court is a nursing home/rehabilitation facility that admits patients for in-house medical, nursing, and rehabilitation services. Included in those services are medical determinations of whether patients should be treated at the facility or transferred to a hospital for further treatment. As a nurse practitioner, Roderick filled a role closely akin to that of a physician, wherein she made rounds within the facility, performed assessments on the patients, reviewed laboratory results and vital signs, developed the appropriate medical plan of care, and made decisions involving any requisite treatments.

The next *Coleman* factor requires a determination of whether the injury suffered by the decedent would have occurred if he had not sought medical treatment. The record reveals the decedent had suffered a cerebral vascular accident and was admitted into the nursing facility for around-the-clock nursing care and rehabilitation services. The alleged injuries he suffered occurred during his admission and treatment at the facility. Therefore, we conclude the injuries, due to Roderick's alleged failures, would not have occurred if the decedent had not sought treatment.

The final *Coleman* factor involves whether the tort alleged was intentional. The nature of the allegations set forth in plaintiff's petition, as they pertain to Roderick, center around Roderick's purported failure to properly assess, diagnose, and treat the decedent's condition.[3] Thus, as stated above, these allegations pertain to medical treatment and sound in

---

[3] Much of plaintiff's argument, in brief and during oral argument, centered around the alleged failure to provide basic custodial care, such as food, hydration, and hygiene. However, such alleged failures are more attributable to the nursing facility – which was responsible for the day-to-day custodial care of the decedent – rather than to Roderick, who made rounds, assessed patients, and ordered medical treatment as a primary healthcare provider.

medical malpractice. The mere fact plaintiff has labeled the alleged acts as "gross negligence" and "willful misconduct" is not determinative of whether the alleged conduct falls under the MMA. Further, we note the issue of whether the alleged conduct, in fact, constitutes gross negligence or willful misconduct is not before the Court at this time. Our review is solely limited to the issue of whether this action is premature and any assertions relative to gross negligence can be presented post medical review panel in due legal course.

Accordingly, after a review of the jurisprudence and application of the *Coleman* factors to the allegations set forth in plaintiff's petition, we conclude the claims asserted by plaintiff against Roderick and PHS fall within the purview of the MMA. Consequently, we find the trial court did not err in sustaining the dilatory exception of prematurity.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court granting the dilatory exception of prematurity filed by defendants, Provider Health Services, L.L.C. and June Roderick, NP, and dismissing plaintiff's petition without prejudice is affirmed. All costs are assessed to plaintiff, Sara McDowell, individually and on behalf of the estate of her husband, Hartley Duncan, deceased.

**AFFIRMED.**

11